Scott WELLS and Bonny Wells

v.

STATE of Maine and Sheriff, Franklin
County and Sherman G. Adams.

Supreme Judicial Court of Maine.

Argued Nov. 18, 1983.

Decided April 9, 1984.

Linda Christ (orally), Pine Tree Legal Assistance, Inc., Augusta, for plaintiff.

James A. McKenna, III (orally), Wayne S. Moss, Anita M. St. Onge, Asst. Attys. Gen., Augusta, for the State of Maine.

Paul H. Mills (orally), Farmington, for Sherman G. Adams, intervenor.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

... provided nevertheless that no mans person shall be kept in prison for debt but when there appears some estate which he will not produce ....

Massachusetts Body of Liberties of 1641.

Once again we are asked to reaffirm the basic principle of individual liberty that persons are not to be imprisoned for debt. Scott and Bonny Wells were committed to jail pursuant to an order finding them in contempt for failure to make installment payments as specified in a "Consent to Installment Payment Order." They appeal from the denial by the Superior Court, Franklin County, of their petition for habeas corpus relief. We hold that the District Court's action cannot stand as either a civil contempt commitment or a criminal contempt commitment. Further, the District Court failed to make the critical finding of the Wellses' ability to pay before jailing them. We therefore reverse the Superior Court's denial of the petition for a writ of habeas corpus.

## I. *Facts*

On June 16, 1982, a disclosure subpoena was served on Scott and Bonny Wells by Sherman G. Adams, a judgment creditor.[1] Both parties appeared in District Court July 15, 1982. The only result of that appearance was a form entitled "Consent to Installment Payment Order" signed by the Wellses and marked "filed and approved" by the judge. In that document the Wellses agreed to make payments of ten dollars per week starting July 23 and increasing to fifteen dollars per week as of October 1 to continue until the judgment is satisfied.[2]

On November 12, 1982, Adams filed a motion for contempt pursuant to 14 M.R. S.A. § 3136 for failure to comply with the July 15 "order." After a hearing held December 16, 1982, the District Court entered the following order:

After hearing both debtors, they are found in contempt of the 7/15/82 Order of payment and the basis of the finding

---

1. On motion, Adams intervened in the habeas corpus proceeding and participates in this appeal as an intervenor-appellee.

2. A handwritten note on the "order" states that the amount of the judgment is $1122.43 as of July 15 and that interest will accrue at a rate of 15%.

is that no payments ... were made in September, '82 although both debtors were in a better financial position then, then [sic] they were in July 82 when they promised the payments....

The order then imposed a ten day jail sentence, suspended until February 24, 1983, by which date the Wellses were ordered to pay $1141.41 in full satisfaction of the debt. If such payment was not made, then they would be jailed.

■ The Wellses had not paid the debt by February 24 and their case was continued to March 3. Upon their appearance in District Court on that date, the court ordered

> it being found that the terms of the December 16, 1982 order has [sic] not been met, therefore the debtors must be placed in service of the 10 day jail term imposed in December 1982....

The Wellses were jailed that day.[3]

On March 4, 1983, the Wellses were released pending a Superior Court hearing on their petition for a writ of habeas corpus. The petition was dismissed on April 26, 1983. The Superior Court found that the contempt was civil because the Wellses had been granted the right to purge themselves of contempt by paying the debt. The court also assumed that the District Court had made the finding of ability to pay necessary to support its contempt decision. The Superior Court refused to consider any other error in either the July or the December orders reasoning that such issues were cognizable only on direct appeal and none of the exceptions of *Northeast Bank, N.A. v. Crochere*, 438 A.2d 266 (Me.1981) were applicable.

## II. *Issue Preclusion*

■ We note initially that the action taken by the District Court on July 15, 1982, does not constitute an order. Merely endorsing "approved" on a form agreement between two parties does not give rise to an order of the court. Further, the docket entry reflecting an order of the court cannot give life to an order that does not exist. However, because the parties have treated the entry as an order, we will review this case as if there were such an order.

The threshold issue presented here is whether the Superior Court correctly decided that issues concerning the validity of the July and December orders are precluded in the "collateral" habeas corpus proceedings by the rule of *Northeast Bank, N.A. v. Crochere*. In *Crochere*, we reiterated that there are three exceptions to the general rule allowing attack on a judgment only by direct appeal: denial of due process, lack of jurisdiction, or adjudication of issues beyond the scope of those submitted for decision. 438 A.2d at 268. None of the exceptions were applicable to that case. In that decision, we acknowledged that the void/voidable labels merely express "the result of an analysis of factors limiting a reexamination of subject matter jurisdiction." 438 A.2d at 268 n. 6. We also recognized the Restatement position outlining the factors to be considered in justifying relitigating issues of subject matter jurisdiction, 438 A.2d at 268 n. 7, citing *Restatement (Second) of Judgments* § 15(1), (2) & (3) (Tent. Draft No. 6, 1979).

In *Eich v. Gellerson*, we mentioned again the principles disavowing reliance on

3. Shortly before oral argument in this Court, Adams moved in District Court to vacate the incarceration order. (A direct appeal from the order was abandoned in favor of prosecuting the habeas corpus petition and this appeal.) The court ordered that the operative language be stricken from the December 16, 1982 and March 3, 1983 orders. Thereafter, Adams moved to dismiss this appeal as moot. In view of the parties' assumption that the installment payment "order" and the contempt finding continue in force and may again serve as a basis for incarceration, we decline to dismiss the appeal. Although the relief sought by the Wellses is technically mooted, we consider both the continuing consequences of the contempt finding and underlying "order" and the public interest in the questions here presented to constitute "sufficient practical effects flowing from resolution of this litigation to justify the application of limited judicial resources." *See State v. Gleason*, 404 A.2d 573, 578 (Me.1979); *see also* text, *infra* at 850.

the labels "void" versus "voidable," "collateral" versus "direct attack." However, the record in that case did not support an analysis of the factors discussed in the Restatement. 441 A.2d 315, 317–18 (Me.1982).

Outside the context of a "collateral" challenge based on subject matter jurisdiction, the Restatement discusses exceptions to the general rule of issue preclusion, allowing relitigation of an issue in a subsequent action between the parties. Included in the circumstances discussed are cases where

> [t]he issue is one of law and ... a new determination is warranted in order ... to avoid inequitable administration of the laws; or ... [t]here is a clear and convincing need for a new determination of the issue ... because of the potential adverse impact of the determination on the public interest, ... or because the party sought to be precluded, as a result of the conduct of the adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication of the initial action.

*Restatement (Second) of Judgments* § 28(2)(b), 5(a) & (c) (1982).

■ Although we need not adopt the Restatement view, we recognize that there exists an extreme and rare case where our duty to protect the public interest and the integrity of the judicial process allow consideration of issues that would otherwise be precluded. This is such a case. In reaching this conclusion, we have considered the factors that the petitioners' fundamental right to liberty is at stake, the absence of any indication that the issues presented by this petition were actually litigated in the District Court, the petitioners' lack of legal representation at any time prior to incarceration, and the evidence in the record of confusion in both procedural and substantive legal principles.

### III. *Civil Versus Criminal Contempt*

■ The initial substantive question presented by this appeal is whether the Wellses' incarceration was the result of a civil or a criminal proceeding. A civil contempt proceeding is a coercive, and therefore remedial, action brought to benefit another party. The contemnor allegedly violated a court order directed toward securing the rights of another party. The contempt proceeding is brought to coerce compliance and to obtain for the other party the benefits of the court order. *Small v. Small*, 413 A.2d 1318, 1322 (Me.1980).

■ Inherent in the coercive nature of the proceeding is the requirement that the contemnor be provided the opportunity to purge himself of contempt by complying with the order and thus secure relief from the court's coercive techniques. If the contemnor is jailed to coerce compliance, the order of commitment must affirmatively provide for release upon compliance with the order. *Small v. Small, supra; State v. Vickers*, 309 A.2d 324 (Me.1973); *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). It is this essential right to purge and thus obtain release from confinement that allows civil contemnors to "carry the keys of their prison in their own pockets." *In re Nevitt*, 117 F. 448, 461 (1902).

■ The judgment creditor Sherman Adams argues that the December 16 contempt order contains the requisite right to purge by providing that the Wellses could avoid going to jail by paying the underlying judgment before the incarceration date. Such a provision does not constitute the right to purge required in a civil contempt order. Clearly the right to purge can have meaning only when the contemnor's compliance will obtain his *release* from the coercive confinement. Confinement without the potential for freedom through compliance amounts to punishment and can properly be imposed only through the vehicle of criminal contempt proceedings with the attendant due process safeguards. In the absence of a clear provision on the commitment order that the Wellses could obtain

their release through compliance, their incarceration was unlawful.

■ The purpose of a criminal contempt proceeding is to punish an affront to the dignity and authority of the Court or an obstruction to the functioning of the Court. The punishment is to vindicate the dignity and authority of the Court. *Small,* 413 A.2d at 1322; *In re Bernard,* 408 A.2d 1279 (Me.1979). If imprisonment is imposed, the sentence must be for a fixed term and there is no requirement of a right to purge. *Meyer v. Meyer,* 414 A.2d 236, 239 (Me.1980).

■ There is also a temporal distinction between criminal and civil contempt. Although civil contempt proceedings may be initiated because of the past failure to comply with a court order, the focus of the proceeding is on achieving compliance in the near future, through the coercive confinement. Criminal contempt focuses solely on past disobedience and the punishment such disobedience merits. Because he cannot undo the past, there is no way for a criminal contemnor to purge himself, as can the civil contemnor. *State ex rel. Calahan v. Powers,* 97 Mich.App. 166, 293 N.W.2d 752 (1980); *People v. Goodman,* 17 Mich.App. 175, 169 N.W.2d 120 (1969).

■ Finally, compliance with the requirements of M.R.Crim.P. 42 is essential to a valid criminal contempt commitment. *Meyer,* 414 A.2d at 239. Where, as here, the limited exception of Rule 42(a) is inapplicable, Rule 42(b) requires that criminal contempt be prosecuted only upon notice and hearing.

The notice shall state the time and place of hearing, allowing reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such.

M.R.Crim.P. 42(b).

■ The Wellses' contempt proceeding did not comply with Rule 42(b) despite the fixed unconditional sentence apparently imposed as punishment for past noncompliance.[4] The notice provided the Wellses was inadequate to inform them that they must stand ready to answer a charge of criminal contempt. The motion delivered to the Wellses states only that they are in arrears on their payments and moves that they be held in contempt. The contempt charged is nowhere described as criminal and cannot therefore constitute adequate notice under M.R.Crim.P. 42(b). *Small,* 413 A.2d at 1323. The punitive commitment is thus unlawful.[5]

### IV. *Present Ability To Pay*

■ The final and most egregious deficiency presented by the entire record is the lack of any finding by the District Court, at any stage of the proceedings, that the Wellses had an ability to pay the amount ordered to be paid. Inherent in the definition of both civil and criminal contempt is an ability to comply with the court's order as well as a contumacious refusal to do so. As discussed, only the latter may rest on a past ability to comply accompanied by a past refusal to do so.

Contempt by its very nature is inapplicable to one who is powerless to comply with the court order. It would be utilized against only that person who, being able to comply, contumaciously disobeys, or refuses to abide by the court order.

4. The basis for the Wellses' commitment described in the December order was the failure to make payments in September. However, the Wellses were jailed only after they failed to pay the entire judgment as ordered in December. Thus, the December contempt finding seems to punish the September noncompliance while the actual incarceration seems to punish the post-December noncompliance. The fact that the court thus ordered incarceration for failure to pay what amounted to a new payment order, not for enforcement of the original installment order via payment of an arrearage, further confuses the nature of the proceeding but reinforces its unlawfulness.

5. We express no opinion whether in a clearly criminal contempt adjudication the appropriate challenge would be under the post-conviction statute. 15 M.R.S.A. §§ 2121 *et seq.*

*Yoder v. County of Cumberland,* 278 A.2d 379, 390 (Me.1971). *See also Hammond v. Sandstrom,* 376 So.2d 466 (Fla.1979); *McDaniel v. McDaniel,* 256 Md. 684, 262 A.2d 52, 57 (1970).

When a creditor seeks to coerce compliance with a prior order to pay by means of a civil contempt commitment, a specific finding of present ability to pay is expressly required by our decision in *Yoder.* We there held that Maine law prohibits incarceration as a means to coerce payment of a money obligation when the debtor is honestly indigent and therefore lacks the power to pay. There must be a hearing prior to incarceration to inquire into the reasons for nonpayment. A determination of the initial obligation to pay followed by a determination of a failure to pay is inadequate to safeguard the debtor's right to remain out of jail if honestly indigent. Procedural due process requires that the debtor be given a subsequent hearing on any honest lack of property and consequent inability to pay, new facts that "are without necessary logical relationship to the original adjudication of the requirement to pay." 278 A.2d 379, 386–87.

 When held against the rigid requirement of a finding that the Wellses had an ability to comply, the District Court's actions reveal multiple errors. The motion for contempt filed November 12 alleged an arrearage of 10 weeks, which would have been no more than $135.00 on that date. By the December 16 hearing, the arrearage could not have been greater than $195.00. The District Court made no finding that the Wellses could have paid that amount. The District Court stated only that the Wellses were "in a better financial position" in September than they were in July.[6] The District Court then ordered the Wellses to pay, not just the past-due installments, but the entire judgment. Thus, in response to a contempt motion, the District Court en-

tered an entirely new order of payment, absent any finding of any ability to pay or any other apparent compliance with the disclosure statute. The December hearing was thus grossly inadequate to support a contempt finding or an order of commitment.

 Further, the commitment of the Wellses on March 3, supported only by a finding that they had failed to pay the entire judgment, was exactly the abuse which *Yoder* sought to avoid. Prior to incarceration for failure to pay a money obligation as ordered by the court, there must be a hearing to inquire into whether nonpayment was the result of an honest inability to pay. Absent such an inquiry, the incarceration violated the Wellses' right to procedural due process. 278 A.2d at 388.

The District Court's multiple errors throughout the contempt proceeding, culminating in the unlawful incarceration were apparent on the record presented to the Superior Court. We conclude that, as a matter of law, the petitioners should have been granted habeas corpus relief. We therefore reverse the judgment of the Superior Court.

The entry is:

Petitioners discharged.

All concurring.

---

6. Although we need not now adopt the proposition urged by the State that debtors cannot waive the disclosure hearing and initial judicial determination of ability to pay required by 14 M.R.S.A. § 3127, we do hold that a debtor's agreement to make certain payments does not relieve the judgment creditor of the burden, in subsequent contempt proceedings, of proving the debtor's ability to make the payments.