MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2014 ME 13
Docket:        Wal-13-11
Submitted
 On Briefs:    October 31, 2013
Decided:       February 4, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and JABAR, JJ.

CHRISTINE A. MURPHY

v.

WILLIAM E. BARTLETT

LEVY, J.

[¶1]   William E. Bartlett appeals from a judgment entered in the District Court  (Belfast, *Worth, J.*) finding him in contempt for failing to make payments required by a divorce judgment, and ordering Bartlett's incarceration should he not remedy his contempt.   Bartlett contends that the judgment was premised on erroneous factual findings regarding his ability to meet his obligations under the divorce judgment.   We affirm the court's finding of contempt to the extent that it was based on Bartlett's past failure to comply with the divorce judgment, but vacate the court's imposition of coercive imprisonment as a remedial sanction for Bartlett's prospective noncompliance and remand for further proceedings.

## I.  BACKGROUND

[¶2]   Christine A. Murphy and William E. Bartlett were married in 1991. Murphy filed for divorce in 2009.  In January 2011, the District Court entered a

2

divorce judgment dividing the parties' property and ordering Bartlett to make the following payments: child support of $192.56 per week from January 2011 until the parties' minor child graduated from high school; spousal support of $1000 per month from January 2011 through June 2012, and then $1500 per month from July 2012 through October 2019; fifty percent of the mortgage, real estate taxes, and homeowners insurance associated with the marital home; and a combined $26,598.27 in credit card debt on five separate credit accounts.

[¶3]  After the divorce judgment was entered, Bartlett made timely payments until early 2012, when he told Murphy that he expected to be laid off from his job as a construction foreman and would no longer be able to meet his obligations under the divorce judgment.  Beginning in March 2012, Murphy paid Bartlett's share of the mortgage, insurance, and real estate taxes.  Bartlett also fell behind on the credit card debt, resulting in Murphy making seven monthly payments on three different accounts throughout 2012.  Bartlett also missed several child support and spousal support payments during 2012.

[¶4]  In May 2012, Murphy filed a motion for contempt against Bartlett pursuant to M.R. Civ. P. 66(d).  The court held a hearing in October 2012 at which Murphy testified that she had been forced to borrow money to make Bartlett's payments for him and that his failure to meet his obligations had negatively affected her credit rating.  With respect to spousal support and child support,

though, Murphy testified that Bartlett had met nearly all of his obligations as of the date of the hearing.

[¶5]   When Bartlett was asked at the hearing why he fell behind on his payments in early 2012, Bartlett testified, "Well, basically, I ran out of money.  My financial resources were exhausted."  Bartlett introduced tax returns showing that his gross yearly income had decreased from about $57,000 in 2010 to $46,754 in 2011.  With respect to Bartlett's earnings in 2012, his pay stubs showed wages of approximately $650 to $900 per week in gross pay, and Bartlett testified that he had been temporarily unemployed for three weeks earlier in the year.  When questioned further, Bartlett admitted that he had taken two weekend trips to Tennessee and North Carolina during the period in which he failed to make payments.  Bartlett testified that both trips were paid for by a companion and that, due to the trips, he missed four days' worth of pay.

[¶6]   On October 31, 2012, the court entered a judgment finding Bartlett delinquent in making the following payments: $1774.77 in mortgage payments; $1062.56 in real estate taxes; $134.25 in homeowners insurance; and a combined $18,857.90 in credit card payments.  The court found that Bartlett was "on track" to earn in 2012 what he had earned the previous year, that he had money left over at the end of each week that he could have used to make his payments, and that he took several unpaid vacation days during the months in which he claimed he could

not meet his family obligations. The court also found that Bartlett's ability to become current on his spousal and child support payments demonstrated that he was "able to pay as ordered." Accordingly, the court found that Murphy had met her burden of demonstrating by clear and convincing evidence that Bartlett had "failed to comply with the January 10, 2011, Divorce Judgment, despite having had and now having the ability to comply with the judgment provisions, at least in part." The court held Bartlett in contempt and committed him to ninety days in jail, suspended, subject to Bartlett making each payment specified in the divorce judgment for three years, at which point he will have purged himself of contempt. The court also ordered that, upon the sale of Bartlett and Murphy's home, Bartlett was to apply his share of the expected proceeds to the outstanding credit card balances and Murphy's legal fees. Bartlett moved for additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52, which the court denied.[1] This appeal followed.

---

[1] In his Rule 52 motion, Bartlett requested findings of fact regarding his post-tax income for the period covered by the court's judgment, his living expenses during that period, and the monthly payments required by the divorce judgment. The court denied Bartlett's motion because it did not comply with M.R. Civ. P. 7(b)(3), which requires that the motion be accompanied by a draft order specifically stating the relief requested. The court also determined that its judgment finding Bartlett in contempt "adequately addressed the factual and legal issues presented at trial."

## II.  DISCUSSION

[¶7]  Bartlett argues that the court's judgment of contempt should be vacated because it was based upon erroneous factual findings regarding his ability to make the payments required by the divorce judgment.  We address Bartlett's arguments in two parts: first, we examine the court's findings regarding Bartlett's ability to comply with the divorce judgment, and second, we examine the remedial sanctions imposed by the court to cure Bartlett's contempt.  In doing so, we review the factual findings that form the basis of the court's judgment of contempt for clear error.  *Lewin v. Skehan*, 2012 ME 31, ¶ 18, 39 A.3d 58 (citing *Wrenn v. Lewis*, 2003 ME 29, ¶ 13, 818 A.2d 1005).

A.     Bartlett's Ability to Comply with the Divorce Judgment

[¶8]  Bartlett contends that the court erred in finding that he had the ability to comply with the divorce judgment.  Addressing the court's findings regarding Bartlett's ability to meet his obligations requires a two-part analysis.  First, we review the court's judgment of contempt to the extent that it was based on Bartlett's failure to comply with the divorce judgment to the fullest extent possible as of the date of the contempt judgment.  Second, we review the court's finding that Bartlett has the prospective ability to make all of the payments required by the divorce judgment.

    1.    Bartlett's Failure to Make Past Payments Required by the Divorce Judgment

[¶9]  For a court to find a party in contempt, the complaining party must establish by clear and convincing evidence that the alleged contemnor failed or refused to comply with a court order and presently has the ability to comply with that order. *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 11, 982 A.2d 339; *White v. Nason,* 2005 ME 73, ¶ 7, 874 A.2d 891; M.R. Civ. P. 66(d)(2)(D). Although a party cannot be held in contempt when compliance is impossible, *see Lewin*, 2012 ME 31, ¶ 19, 39 A.3d 58, the ability to pay or comply with a court order is, as we stated in *Efstathiou*, "not an all or nothing proposition," 2009 ME 107, ¶ 13, 982 A.2d 339. A party subject to a court order "must comply to the fullest extent possible, regardless of whether such efforts result in compliance in whole or in part." *Id.* (quotation marks omitted).

[¶10]  Here, the court found that Bartlett "failed to comply with the January 10, 2011, Divorce Judgment, despite having had and now having the ability to comply with the judgment provisions, at least in part." Competent evidence—including Bartlett's bank statements, his earnings history, and his testimony regarding taking two trips that resulted in missing four days of work— supported the court's finding by clear and convincing evidence that Bartlett had not complied with the divorce judgment to the fullest extent possible.

*See Efstathiou*, 2009 ME 107, ¶¶ 11, 13, 982 A.2d 339.  We therefore affirm the court's finding of contempt to the extent that it was based on Bartlett's failure to make the payments required by him until the date of the judgment of contempt.

    2.    Bartlett's Prospective Ability to Fully Comply With the Divorce Judgment

[¶11]  Although competent evidence supported the court's finding that Bartlett could have more fully complied with the divorce judgment, we separately review the question of whether the court erred in finding, by clear and convincing evidence, that Bartlett has the ability to make all future payments required by the divorce judgment.  The distinction is critical because, as discussed below, the court's imposition of coercive imprisonment as a remedial sanction for Bartlett's contempt was necessarily premised upon its finding that Bartlett has the ability to fully comply with the divorce judgment for the next three years.  *See Wells v. State*, 474 A.2d 846, 851-52 (Me. 1984) (holding that coercive imprisonment as a remedy for contempt must be based upon a specific finding that the contemnor has the present ability to comply with the court's order but refuses to do so).  Accordingly, we review the court's finding regarding Bartlett's prospective ability to make every payment required by the divorce judgment.

[¶12]  In finding that Bartlett is "able to pay as ordered," the court did not make specific findings regarding Bartlett's earning capacity as compared to his

expenses and obligations. Because a court's prospective imposition of coercive imprisonment as a remedy for contempt is premised upon the requirement that the contemnor has the ability to perform the required acts "no later than the date established for the onset of incarceration," *see Wrenn*, 2003 ME 29, ¶¶ 27-28, 818 A.2d 1005, the preferred practice is for the court to make an express finding of this basic calculation of obligations versus expenses in any order that prospectively orders incarceration. Nonetheless, because Bartlett failed to properly request findings of fact on this issue we assume that the court made all necessary subsidiary findings to support the judgment so long as those findings are supported by the record. *See Efstathiou*, 2009 ME 107, ¶ 10, 982 A.2d 339. Thus, the court's finding that Bartlett can "pay as ordered," and its inferred finding that Bartlett's income equals or exceeds his expenses, are reviewed for clear error and will be affirmed if they are supported by competent evidence in the record. *See id.*; *Lyons v. Baptist Sch. of Christian Training*, 2002 ME 137, ¶ 13, 804 A.2d 364.

[¶13]  With respect to Bartlett's income, the court found that Bartlett was "on track" to earn a gross income of approximately $46,000 in 2012. This finding was supported by Bartlett's pay stubs, tax returns, and testimony at trial. Although the court did not calculate Bartlett's net income, competent evidence in the record indicates that Bartlett's net income is approximately $41,000 per year.

[¶14]   Regarding Bartlett's obligations and expenses, the court made a general finding regarding the payments that Bartlett was required to make under the divorce judgment.  Based on that finding, as well as other competent evidence in the record, a conservative estimate of Bartlett's total obligation under the terms of the divorce judgment is approximately $32,000 per year.[2]  The court likewise did not make a detailed finding regarding Bartlett's living expenses but, viewing Bartlett's living expenses as a whole, the record shows that Bartlett's annual living expenses total approximately $14,000.[3]   Thus, Bartlett's annual expenses, including his payment obligations under the divorce judgment and his living expenses, total approximately $46,000.

[¶15]   Accordingly, the court's findings and the competent evidence in the record demonstrate that Bartlett's expenses and obligations exceed his net income

---

[2]   Under the terms of the divorce judgment, Bartlett owed the following as of October 2012: spousal support of $1500 per month; mortgage payments of $386 per month (not taking into account the temporary hardship reduction that Murphy obtained); real estate taxes of approximately $183 per month; homeowners insurance of approximately $22 per month; and credit card payments of approximately $550 per month.  Bartlett's total yearly obligation under the divorce judgment was thus approximately $32,000.

[3]   The only finding the court made regarding Bartlett's living expenses was its finding that Bartlett "does not have to pay" the $400 monthly rent he owes his sister.  The only evidence in the record concerning Bartlett's rent was Bartlett's testimony, "I have rent of 400 a month, but I haven't been able to pay that."  Murphy did not contradict that assertion.  Modest housing expenses are an ordinary necessity for most adults, and the record before the court did not contain any information regarding alternatives to the rent that Bartlett addressed.  Based on this testimony alone, it was not reasonable for the court to find that it was highly probable that Bartlett "does not have to pay" his rent.  *See Adoption of L.E.*, 2012 ME 127, ¶ 11, 56 A.3d 1234 ("When the burden of proof at trial is clear and convincing evidence, our review is to determine whether the fact-finder could reasonably have been persuaded that the required findings were proved to be highly probable.") (quotation marks omitted).

by approximately $5000 per year. The court's finding, by clear and convincing evidence, that Bartlett has the ability to make his required payments prospectively for three years was therefore clear error. With this in mind, we turn to the remedial sanctions ordered by the court to cure Bartlett's contempt.

B.     The Court's Remedial Sanctions for Bartlett's Contempt

[¶16]  Civil contempt proceedings are "remedial in nature." *Small v. Small*, 413 A.2d 1318, 1322 (Me. 1980). When a contemnor violates a court order directed toward securing the rights of another party, the contempt proceeding "is brought to coerce compliance and to obtain for the other party the benefits of the court order." *Wells*, 474 A.2d at 850 (citing *Small*, 413 A.2d at 1322). Rule 66(d)(3) of the Maine Rules of Civil Procedure provides that a court, in sanctioning a person adjudged to be in contempt, may impose remedial sanctions such as coercive imprisonment, coercive or compensatory fines, or "such additional relief as has heretofore been deemed appropriate to facilitate enforcement of orders." Here, the court imposed two sanctions as remedies for Bartlett's contempt: Bartlett's incarceration should he fail to make each payment due under the divorce judgment for the next three years, and the application of Bartlett's share of the proceeds from the sale of Bartlett and Murphy's house toward payment of the outstanding credit card debt and Murphy's legal fees. We address each in turn.

1. Bartlett's Incarceration for Failure to Make Future Payments

[¶17] After finding that Bartlett was "able to pay as ordered" the obligations required by the divorce judgment, the court committed Bartlett to ninety days in jail, suspended subject to his compliance with the divorce judgment for the next three years, at which point Bartlett will have cured himself of contempt. Rule 66(d)(3)(A) of the Maine Rules of Civil Procedure expressly contemplates the use of coercive imprisonment as a remedial sanction for contempt: "A person adjudged to be in contempt may be committed to the county jail until such person performs the affirmative act required by the court's order." However, the imposition of coercive imprisonment as a remedy for contempt is premised upon the requirement that the contemnor have the ability and opportunity to purge himself of contempt. *See Wrenn*, 2003 ME 29, ¶¶ 27-28, 818 A.2d 1005; *Wells*, 474 A.2d at 850-52. "We have figuratively described the requirement that contemnors 'carry the keys of their prison in their own pockets' as an essential predicate for the imposition of coercive incarceration as a coercive remedy for civil contempt." *Wrenn*, 2003 ME 29, ¶ 27, 818 A.2d 1005 (quoting *Land Use Regulation Comm'n v. Tuck*, 490 A.2d 649, 652 (Me. 1985)). Thus, when a court orders incarceration but postpones the incarceration to afford the contemnor an opportunity to perform his obligations, "the contemnor must be found to have the ability to perform the acts required no later than the date established for the onset

of incarceration." *Id.* ¶ 28. Here, the court ordered Bartlett's incarceration should he fail to make any payment over the next three years beginning with his next required payment, but, as established above, the finding by clear and convincing evidence that Bartlett has the ability to make all future payments required by the divorce judgment was clear error. As a result, the imposition of coercive imprisonment was likewise in error because there does not exist clear and convincing evidence that Bartlett will be able to purge himself of contempt and secure his freedom from incarceration. *See id.* ¶¶ 24-29; *Zink v. Zink*, 687 A.2d 229, 232-33 (Me. 1996); *Tuck*, 490 A.2d at 652 (holding that the requirement that a contemnor be allowed to comply with the court order is an "essential ingredient" of a civil contempt sanction (quotation marks omitted)).

2. The Allocation of Bartlett's Share of the Proceeds From the Sale of the House

[¶18] The court also imposed a second remedial sanction: Bartlett, upon the sale of his and Murphy's house, is to apply his share of the proceeds to the outstanding credit card debt and Murphy's legal fees. This was an appropriate remedy within the court's discretion. *See* M.R. Civ. P. 66(d)(3) ("The court may also order such additional relief as has heretofore been deemed appropriate to facilitate enforcement of orders . . . ."); *Hogan v. Veno*, 2006 ME 132, ¶ 18, 909 A.2d 638 ("[W]e review the remedies [imposed pursuant to M.R. Civ. P.

66(d)(3)] for an abuse of discretion."). Moreover, the court's order that Bartlett be incarcerated should he fail to apply the sale proceeds as directed was not in error. Because the court made its directive regarding Bartlett's use of the sale proceeds contingent upon the sale of the house, it follows that Bartlett will have the ability to comply with the court's order no later than the potential date of incarceration. *See Wrenn*, 2003 ME 29, ¶ 28, 818 A.2d 1005; *Wells*, 474 A.2d at 850-52. Thus, while the court's remedial sanction of coercive imprisonment to ensure Bartlett's prospective compliance with the divorce judgment was in error, its threat of imprisonment to ensure Bartlett's compliance with the allocation of the sale proceeds was not.

## III. CONCLUSION

[¶19] For the reasons set forth above, we (1) affirm the court's finding that, regarding Bartlett's past payments, Bartlett "failed to comply with the January 10, 2011, Divorce Judgment, despite having had and now having the ability to comply with the judgment provisions, at least in part"; (2) affirm the court's imposition of coercive imprisonment to ensure that Bartlett apply his share of the net proceeds from the sale of the house to pay the outstanding credit card debt and Murphy's attorney fees; and (3) vacate the court's sanction of incarceration should Bartlett fail to make each payment required by the divorce judgment for the next three years. We remand for the District Court to (1) determine with particularity

Bartlett's ability to prospectively comply with the divorce judgment; (2) provide "a clear description of the action that is required for [Bartlett] to purge the contempt," M.R. Civ. P. 66(d)(3), by identifying the recipient and amount of each payment he must make in light of his ability to pay; and (3) impose a remedial sanction the court deems necessary.

The entry is:

> Judgment vacated as to the remedial sanction of coercive imprisonment to compel Bartlett's prospective compliance with the divorce judgment, and remanded for further proceedings consistent with this opinion. Judgment affirmed in all other respects.

**On the brief:**

Thomas F. Shehan, Jr., Esq., Searsport, for appellant William E. Bartlett

Christine A. Murphy did not file a brief

Belfast District Court docket number FM-2009-21
FOR CLERK REFERENCE ONLY