2014 ME 81

**U.S. BANK, N.A.**

v.

**David SAWYER et al.**

**Docket No. Cum–13–472.**

Supreme Judicial Court of Maine.

Argued: May 13, 2014.
Decided: June 24, 2014.

John P. McVeigh, Esq., and Jonathan G. Mermin, Esq., Adam Shub, Esq. (orally), Preti Flaherty Beliveau & Pachios, LLP, Portland, on the briefs, for appellant U.S. Bank, N.A.

Thomas A. Cox, Esq., Portland, argued and on the briefs, for appellees David Sawyer and Debra Sawyer.

Panel: ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1]   U.S. Bank N.A. (Bank) appeals from the judgment of the Superior Court (Cumberland County, *Mills, J.*) dismissing the Bank's foreclosure complaint with prejudice. The Bank contends that the court abused its discretion in dismissing the complaint because there was no evidence of bad faith or of prejudice to the mortgagor, and because the sanction it imposed is too severe. We affirm the judgment.

## I.   BACKGROUND

[¶ 2]   The following facts are taken from the unrebutted testimony of David and Debra Sawyer offered at the September 24, 2013, show cause hearing. *See*

*Theriault v. Murray*, 625 A.2d 908, 909 (Me.1993).

[¶ 3]   In 2009, the Sawyers first defaulted on a mortgage held by the Bank.[1] After their default, the Sawyers were approved for a modification plan under which they were to make a reduced monthly payment for a trial period of six months. The Sawyers met their payment obligations at the reduced rate, but at some point the loan-servicing agency, on behalf of the Bank,[2] increased their monthly payment to a level above the predelinquency amount and the Sawyers were again unable to make timely payments. In 2012, the Bank filed a complaint for foreclosure. At the time the complaint was filed, J.P. Morgan Chase Bank N.A. (Chase) had taken over as loan servicer from the servicer with whom the Sawyers had negotiated the reduced payment schedule. After the complaint was filed, and before the first of four court-ordered mediations took place, the Sawyers contacted Chase in an attempt to negotiate a modification. They were told to provide Chase with a list of documents, which they did. The Sawyers reported, however, that Chase kept requesting additional documents or new copies of documents that they had already submitted.

### A.   The First Mediation

[¶ 4]   In October 2012, Chase and the Sawyers met at the first mediation session. The Sawyers again expressed their interest in a modification. Chase requested additional copies of the same documents that the Sawyers had already submitted in

---

1.   In its complaint, the Bank alleged that the original mortgagee of record for the note on the Sawyer's home was Mortgage Electronic Registration Systems, Inc., a Delaware corporation. Bear Stearns is the original holder of the mortgage and the creator of Bear Stearns asset-backed securities, series 2006–HE8, which includes the Sawyers' mortgage. The Bank is trustee and successor-in-interest to

Bank of America, which in turn is a trustee and successor-in-interest for certificate-holders of Bear Stearns asset-backed securities, series 2006–HE8.

2.   At all times, the mortgage has been serviced by independent entities that did not actually hold the mortgage.

the months leading up to the mediation session. Chase promised the Sawyers that if they provided the requested documentation a second time, it would make a decision within 30 days of submittal. The Sawyers submitted the requested documents, but Chase did not make a decision on the modification.

### B. The Second Mediation

[¶ 5] On February 22, 2013, the parties attended another mediation session. Again, the Sawyers were given a list of documents to provide. This time Chase promised to respond to the modification request by April 22. The Sawyers hand-delivered the requested documents to Chase's local counsel, but Chase did not respond by April 22, and still had not done so by the date of the next scheduled mediation, May 17.

### C. The Third Mediation

[¶ 6] At the May mediation, Chase once again requested additional documentation and expressly promised to respond by June 28. The mediator later reported to the court that Chase confirmed it was in receipt of the required documents and that it would respond with a "definite answer" by the agreed-upon date. The Sawyers did not receive a response by June 28. After the deadline had passed, the Sawyers attempted unsuccessfully to contact Chase. When their housing counselor did reach Chase, he was informed that the Sawyers' modification was in the final stages of underwriting and would be released "in just a couple of days." Instead of a modification, however, the Sawyers received notice on July 17—only a few days after their housing counselor spoke with Chase and had been promised that a modification was imminent—that their

loan would be transferred to yet another servicer, Select Portfolio Servicing (SPS).

[¶ 7] After the third mediation, the court held a status conference at which the Sawyers reported that in addition to the delays perpetuated by Chase, they were subjected to daily debt-collection calls and letters, and that new and excessive taxes, fees, and interest were regularly added to the valuation of their debt, making it less likely that they would be approved for a modification.[3] The Sawyers accepted that they were responsible for the initial default, but reported that the post-default actions of Chase and other servicers were causing them severe distress. After hearing a summary of what had occurred at the mediation sessions (including a description of Chase's actions and inaction), the court directed Chase that, unless the issues were resolved at the mediation on September 10, it was to appear on September 24 and show cause why the complaint should not be dismissed with prejudice.

### D. The Fourth Mediation

[¶ 8] No agreement or modification was reached at the September mediation. Instead, the new servicer, SPS, informed the Sawyers that they would have to submit entirely new documentation if they wished to be considered for a modification. SPS demanded these documents within ten days.

### E. The Show Cause Hearing

[¶ 9] On September 24, the court conducted a show cause hearing. Although SPS had been aware of the hearing date since August 15, it retained counsel only a few days prior to the hearing. It sent counsel to the hearing with an oral propos-

---

**3.** For example, Debra Sawyer testified that her taxes and homeowners insurance totaled

$5,000 for 2013, but the lender requested an escrow for $16,367.

al for a proprietary modification,[4] but without evidence, witnesses, or any convincing argument as to why the court should not dismiss the case with prejudice.

[¶ 10] Noting that the Bank had the burden of going forward, the court found that the Bank was not prepared to proceed at the hearing "in spite of the notice to be prepared to proceed" and dismissed the complaint with prejudice. The Bank appeals.

## II. DISCUSSION

■ [¶ 11] Parties to a foreclosure mediation must "make a good faith effort to mediate all issues." 14 M.R.S. § 6321–A(12) (2013); M.R. Civ. P. 93(j). If the parties fail to participate in good faith, the court "may impose appropriate sanctions," including dismissal of the complaint with prejudice. M.R. Civ. P. 93(j). Dismissal with prejudice is a severe sanction that has constitutional implications and will be given close scrutiny on appeal. *See Bayview Loan Servicing, LLC v. Bartlett,* 2014 ME 37, ¶ 11, 87 A.3d 741. The imposition of sanctions, however, remains a discretionary decision. *Estate of Hoch v. Stifel,* 2011 ME 24, ¶ 32, 16 A.3d 137. And we have confirmed that the trial court is within its discretion to dismiss a complaint with prejudice if a bank or an independent mortgage servicer fails to negotiate in good faith. *See Bartlett,* 2014 ME 37, ¶ 25, 87 A.3d 741.

■ [¶ 12] The court, in its show cause order, placed the parties on notice that dismissal with prejudice was a very real possibility. Despite this warning, the Bank was not prepared to present any evidence to explain or excuse its dilatory conduct or otherwise explain why the com-

plaint should not be dismissed with prejudice. Given the Bank's failure to meet its burden at the show cause hearing—after receiving adequate notice and a meaningful opportunity to be heard on the potential dismissal—we conclude that the court did not abuse its discretion in imposing the sanction. *See Pelletier v. Pelletier,* 597 A.2d 60, 61 (Me.1991) (stating that lack of preparedness is not an excuse when adequate notice is given); *see also Bartlett,* 2014 ME 37, ¶ 14, 87 A.3d 741 ("We have ... considered the presence of a warning as a factor supporting dismissal with prejudice.").

[¶ 13] The Bank concedes, as it did in the Superior Court, that it failed to participate constructively in the mediation process and that it was not prepared to present evidence at the hearing, but argues (A) that the sanction of dismissal with prejudice is excessive under the circumstances and creates a windfall for the Sawyers, and (B) that there is no evidence that it acted in bad faith during the mediation process or that the Sawyers were prejudiced by the Bank's delays.

### A. Severity of the Sanction

■ [¶ 14] We recently upheld the sanction of dismissal with prejudice when a lender engaged in similar dilatory practices during the foreclosure mediation process. *Bartlett,* 2014 ME 37, ¶ 25, 87 A.3d 741. In that case, we concluded that the trial court did not abuse its discretion in imposing the sanction when a lender failed to negotiate in good faith and did not appear at four mediation sessions. *Id.* ¶¶ 18, 25. We also rejected the argument that the sanction of dismissal with prejudice should not be imposed simply because it creates a windfall for the borrowers. *Id.*

---

4. The Court understands the Bank's description of the mortgage modification as proprietary, meaning that the new mortgage was a specific and unique offering to the Sawyers that was not made through the standard mortgage modification process.

¶ 22. Like the lender in *Bartlett,* the Bank has delayed the mediation process for an extended period of time. And although this lender did, unlike the lender in *Bartlett,* attend the mediations, its repeated failures to cooperate and participate meaningfully in the mediation process produced a similar result: the borrowers never received a response to their request for a modification, and the Bank's actions and inaction resulted in the accrual of significant additional fees, interest, costs, and a reduction in the net value of the borrower's equity in the property.

B. Evidence of Bad Faith and Prejudice

[¶ 15] The court is not required to find evidence of bad faith; rather, it is required to find only a lack of good faith. *Id.* ¶ 13 (holding that the sanctioning court is not required to find evidence of "willfulness, bad faith, or fault in order to impose sanctions" (quotation marks omitted)). Here, the court could have found from its own files that the Bank failed to act in good faith. *See Murphy v. Bartlett,* 2014 ME 13, ¶ 17, 86 A.3d 610 (reviewing findings relevant to the imposition of a sanction for clear error). The court file contains evidence of the Bank's agreements at mediation to provide offers for modifications, and multiple failures to do just that.

[¶ 16] Similarly, the court could have found that the Sawyers were prejudiced by the Bank's failure to participate in the mediation process in good faith. *See id.* In addition to the significant emotional upheaval the Sawyers experienced as a result of the failed promises by the Bank and its failure to meaningfully participate in the mediation,[5] the Sawyers were also prejudiced by the costs, fees, and other expenses that resulted from the delay.

5. The Bank conceded at the show cause hearing that the Sawyers have "been through

[¶ 17] M.R. Civ. P. 93(j) is explicit in its requirement of good faith participation by all parties, which we have highlighted frequently in recent years. *See, e.g., Bartlett,* 2014 ME 37, ¶ 12, 87 A.3d 741; *First Franklin Fin. Corp. v. Gardner,* 2013 ME 3, ¶ 7, 60 A.3d 1262. If banks and mortgage servicers intend to do business in Maine and use our courts to foreclose on delinquent borrowers, they must respect and follow our rules and procedures, including M.R. Civ. P. 93(j). Failure to do so may, as here, expose a litigant to significant sanctions, including the prospect of dismissal with prejudice.

The entry is:

Judgment affirmed.