ENTERED OCT 2 3 2014

STATE OF MAINE          SUPERIOR COURT
CUMBERLAND, ss.         CIVIL ACTION
              Docket No. RE-10-24

CMM-RQC-10-17-14

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

        Plaintiff

                           ORDER

v.


MOULAY M. IBOURK,

        Defendant


Before the court is the Defendant's Motion for Contempt pursuant to M.R. Civ. P. 66.[1]

The court, however, is treating this matter as a Motion for Sanctions pursuant to Rule 93(j). *See*

M.R. Civ. P. 93(j). The court held a testimonial hearing on this matter, and has reviewed the case

file, including the post-hearing findings of facts submitted by both parties.

I. Factual and Procedural Background

The court provides the following detailed background to show the extended and

complicated path this case has taken.

This foreclosure action pursuant to 14 M.R.S. § 6321 was filed on January 22, 2010. The

parties went through mediation in May of 2010. At that point, the Defendant was supposed to

receive a temporary modification that would lead to a permanent modification. Chase, however,

never contacted Mr. Ibourk to tell him where to send payments.

---

[1] The court notes that there are a number of pending Motions in the file, which have not been addressed because of agreements and developments in the case. The Defendant filed a Motion to Remove Case from Trial List and Motion to Dismiss on August 12, 2013. Subsequently, however, the Plaintiff submitted a Consented-To Motion to Continue Trial, which represented that the parties were working on short sale negotiations. The court granted the Consented-to Motion, which continued the trial in this case. On November 8, 2013, the Defendant filed a Motion to Dismiss, as well as a Motion for Contempt (Proceeding for Remedial Sanctions). On November 15, however, the court signed an agreed to order continuing trial and for further mediation. This order took the case off the trial list and returned it to mediation. On December 2, 2013, this court ordered that a contempt subpoena be issued requiring the Plaintiff to appear at a hearing on January 9, 2014, but the court subsequently continued the hearing until after the parties' mediation date of January 10, 2014.

On September 4, 2012, the court issued an order (the "September 2012 Order") finding that there were equitable considerations created by Plaintiff's failure to implement in good faith the agreed to settlement. The court required the parties to re-start the foreclosure mediation process and mediate in good faith. The order also mandated that the Defendant was not to suffer any economic costs or expenses "attributable to the failure of Plaintiff to fulfill its obligations under the May 14, 2010 settlement."

On December 27, 2012, the Defendant wrote to the court to inform the mediator that the Defendant would refuse to provide updated financial information, because the Defendant believed that this information would punish the Defendant for having improved himself economically since the time when the original mediated agreement was breached. The Defendant believed that this punishment was contrary to the court's September 2012 Order.

On February 15, 2013, the parties met for their second mediation session. Because Mr. Ibourk declined to provide an updated financial package, the lender represented that it could not offer a loan modification at that time. Renee Burden, a representative from the servicer, Seterus, suggested that the homeowner submit a short sale offer with a waiver of deficiency. The Defendant asked whether it would be problematic if the sale were not an arm's length transaction, and Ms. Burden instructed the Defendant that he should move forward and propose the sale. The parties decided to pursue a short sale.

On November 8, 2013, the Defendant filed its Motion for Contempt (Proceeding for Remedial Sanctions) pursuant to Rule 66(d). Fannie Mae was served with a contempt subpoena on February 10, 2014.

On, March 4, 2014, the Plaintiff filed a Motion to Dismiss the Contempt Proceedings. The Plaintiff argued that it had not violated a court order and that Rule 66 does not apply as sanctions for cases in mediation are covered by Rule 93(j)[2] and 14 M.R.S. § 6321-A(12)[3]. Rule

---

[2] Maine Rule of Civil Procedure 93(j) states:
> If a plaintiff or defendant or attorney fails to attend or to make a good faith effort to mediate, the mediator shall inform the court, and the court may impose appropriate sanctions. Sanctions may include, but are not limited to, the assessment of costs and fees, assessment of reasonable attorney fees, entry of judgment, permitting dispositive motions and/or requests for admissions to be filed,

2

66(a)(1) states that "[t]his rule shall not apply to the imposition of sanctions specifically authorized by other provisions of these rules or by statute." The Defendant has clarified that he is seeking contempt sanctions for violation of the court's September 2012 Order.

At the hearing on March 5, 2014, the court ruled that it was proceeding under Rule 93, and that the court was treating Defendant's motion as a motion for sanctions rather than a motion for contempt. The court heard testimony regarding the failed attempt at a short sale that the parties engaged in.

The court heard from Mr. Ibourk's designated broker, Jeff Reali, about the frustrating process of attempting to sell Mr. Ibourk's property. In an attempt to sell the property, Mr. Reali worked with Seterus, Inc. representatives Robbin Sutton and Renee Burden. Seterus, Inc. serviced the loan, while Fannie Mae was the investor on the loan. Fannie Mae's permission was necessary for a short sale to take place.

On March 21, 2013, Mr. Reali listed Mr. Ibourk's 30 Codman Street Unit 1 property for sale. The property was not shown because it would have been very difficult for a buyer to obtain financing for the property. The condominium association had fallen apart and the property was in poor condition.

Mr. Ibourk's roommate in California, a physician named Dr. David Longstroth, made an initial offer on the property of $60,000. The servicer countered at approximately $104 or $107,000. All of the negotiations were between the lender and Dr. Longstroth; Mr. Ibourk was uninvolved in negotiations. After approximately five months, the parties became close to reaching a deal. Dr. Longstroth offered $90,000.00 and Robbin Sutton emailed that the investor would entertain an offer of $95,000.00. (*See* Def.'s Ex. 5).

entry of an order that mediation shall not occur, dismissal without prejudice, dismissal without prejudice with a prohibition on refiling the foreclosure action for a stated period of time, and/or dismissal with prejudice.

[3] Section 6321-A(12) states:
Each party and each party's attorney, if any, must be present at mediation as required by this section and shall make a good faith effort to mediate all issues. If any party or attorney fails to attend or to make a good faith effort to mediate, the court may impose appropriate sanctions.

A purchase and sale agreement was signed by Mr. Ibourk and Dr. Longstroth, with a purchase price of $95,000.00 and an effective date of August 24, 2013. (*See* Def.'s Ex. 6.)

Mr. Reali stated that the lender was aware that Dr. Longstroth and Mr. Ibourk were roommates, and more specifically, Renee and Robbin knew that the two men were roommates. Mr. Reali first disclosed that the two men were roommates when Dr. Longstroth made his initial offer. Mr. Reali also stated in his affidavit that he "called three other times when the issue of the two having the same address arose, each person from Seterus confirmed through higher ups that it was ok that they were roommates." (Reali Aff. ¶ 4.)

An approval letter/settlement agreement was issued soon after the $95,000.00 offer. The letter, which Mr. Reali represented is typical in a short sale transaction, contained all the conditions necessary to close. It also provided: "To accept this offer, you must comply with the Terms and Conditions listed below and list and sell the property that secures this Loan from someone you are NOT related to or with whom you have a close personal or business relationship ("an arms-length transaction"). (Def.'s Ex. 7) (emphasis in the original). The letter was not signed by Mr. Ibourk, because it needed to be signed and notarized at closing. (Def.'s Ex. 7.) The letter did not need to be countersigned by Seterus. (*Id.*)

On October 25, 2013, Dr. Longstroth and Mr. Ibourk executed a short sale affidavit that averred that "The sale of the property is an 'arm's length' transaction, between Seller(s) and Buyer(s) who are unrelated and unaffiliated by family, marriage, or commercial enterprise." (Def.'s Ex. 8.) Dr. Longstroth and Mr. Ibourk are not married, are not relatives and are not in a commercial enterprise together.

Mr. Reali stated that on the day prior to closing he spoke with Robbin and a manager, and Robbin said that the affidavit would be fine. However, that night Robbin and the title company informed him that the situation was not acceptable and the closing was cancelled. Mr. Reali related that there was not a problem with the price, or with forgiving Mr. Ibourk the balance due on the loan; the problem was with selling the property to Dr. Longstroth. Mr. Reali contends that every provision of the settlement agreement was complied with, and that the decision to cancel

4

the sale was based solely on the fact that the two men shared the same address. The lender rejected the sale because the two men were roommates.

Dr. Longstroth still wishes to purchase the property. He has offered to get his own apartment, or to change from financing to cash to facilitate a faster purchase of the property.

The court also heard from a witness from Seterus, Enan Del Rio, even though the Defendant has specifically subpoenaed a witness from Fannie Mae. Mr. Del Rio discussed an exchange between employees of Seterus stating that it could not permit the type of affiliation between Mr. Ibourk and Dr. Longstroth for a buyer and seller. Mr. Del Rio testified that the title company involved had concerns about whether or not the transaction would qualify as arm's length, and it wanted wording stating that it was okay that the buyer was the seller's roommate. Mr. Del Rio was not sure who at Fannie Mae made the ultimate decision that the sale could not go through, but Fannie Mae does make the final decision. Mr. Del Rio averred that the transaction would have gone through if it had been an arm's length transaction, but it was not an arm's length transaction.

In its questioning of Mr. Del Rio, the Defendant pointed out that in spite of the September 2012 Order stating that "Defendant is not to suffer any economic cost or expenses attributable to the failure of the Plaintiff to fulfill its obligations under the May 14, 2010 settlement", interest had continued to accrue from the first mediation in 2010 until September 4, 2012.

Following the failed attempt at a short sale, the parties once again participated in mediation on January 10, 2014. Plaintiff offered a loan modification that would have included a balloon payment. The Plaintiff also offered a deed-in-lieu option with a waiver of the deficiency. Mr. Ibourk counter-offered that he would accept the terms of the proposed modification if the lender would forgive the balloon payment. Mr. Ibourk's counter-offer was rejected. A final report was issued, and from the report it does not appear that the short sale of the property was discussed.

II. Discussion

Both 14 M.R.S. § 6321-A(12) and Rule 93(j) allow the court to impose sanctions if a party fails to appear at mediation or mediate in good faith. M.R. Civ. P. 93(j). While the mediator failed to report non-compliance on the part of the Plaintiff, the court may still review the parties' conduct and impose sanctions following a motion for sanctions. *See Bayview Loan Servicing, LLC v. Bartlett*, 2014 ME 37, ¶ 20, 87 A.3d 741 ("the court had the authority to dismiss [Plaintiff's] complaint sua sponte pursuant to section 6321–A(12) and Rule 93(j).")

To impose sanctions, a finding of bad faith is unnecessary; the court must simply find "a lack of good faith." *U.S. Bank N.A. v. Sawyer*, 2014 ME 81, ¶ 15, 95 A.3d 608. "'[T]he trial court should evaluate the effect pretrial violations have on the adverse party and also consider the purpose the sanctions are to serve in exercising its discretion.'" *Bartlett*, 2014 ME 37, 87 A.3d 741 (quoting *Unifund CCR Partners*, 2009 ME 19, ¶ 12, 966 A.2d 400). Rule 93(j) provides a non-exhaustive list of sanctions that the court may impose, which includes dismissal with prejudice.[4]

The Law Court established a standard for applying sanctions in *Baker's Table Inc. v. City of Portland,* where the court stated:

> In determining the appropriate sanction to be imposed upon a party for failure to comply with the rules, the court should take into account the purpose of the specific rule at issue, the party's conduct throughout the proceedings, the party's *bona fides* in its failure to comply, prejudice to other parties, and the need for the orderly administration of justice.

2000 ME 7, ¶ 17, 743 A.2d 237.

In *Baker's Table*, the Law Court stated that sanctions should: "fit the punishment to the crime. 'Although the trial court's discretion to choose an appropriate sanction is broad, when a court imposes a 'drastic' sanction such as dismissal or default we will closely scrutinize the court's decision.'" 2000 ME 7, ¶ 16, 743 A.2d 237, 243 (quoting *Saucier v. State Tax Assessor*, 1998 ME 61, ¶6, 708 A.2d 281). "'[T]he ultimate sanction should be imposed only for the most

---

[4] Maine Rule of Civil Procedure 93(j) provides, in pertinent part:
> Sanctions may include, but are not limited to, the assessment of costs and fees, assessment of reasonable attorney fees, entry of judgment, permitting dispositive motions and/or requests for admissions to be filed, entry of an order that mediation shall not occur, dismissal without prejudice, dismissal without prejudice with a prohibition on refiling the foreclosure action for a stated period of time, and/or dismissal with prejudice.

6

serious instances of noncompliance with pretrial procedures.'" *Unifund CCR Partners v. Demers*, 2009 ME 19, ¶ 13, 966 A.2d 400 (quoting *Reeves v. Travelers Ins. Cos.*, 421 A.2d 47, 51 (Me. 1980)) (alteration in original).

In recent decisions, the Law Court has affirmed that "The imposition of sanctions . . . remains a discretionary decision. And . . . the trial court is within its discretion to dismiss a complaint with prejudice if a bank or an independent mortgage servicer fails to negotiate in good faith." *U.S. Bank N.A. v. Sawyer*, 2014 ME 81, ¶ 11, 95 A.3d 608; *see also Bartlett*, 2014 ME 37, 87 A.3d 741 (upholding a dismissal with prejudice where plaintiff had failed to appear at mediation on several occasions.) The Law Court has also upheld a District Court order that required a bank to pay monetary sanctions and enter into a modification that it had agreed to at mediation. *First Franklin Fin. Corp. v. Gardner*, 2013 ME 3, 60 A.3d 1262.

In considering whether to apply sanctions in this matter, and what sanctions to apply, the court is mindful of the factors detailed in *Baker's Table*, 2000 ME 7, ¶ 17, 743 A.2d 237. Plaintiff's behavior during the mediation process has at times been antithetical to the spirit of the Foreclosure Diversion Program. The court also notes Plaintiff's behavior in response to Defendant's Motion for Contempt, While the Plaintiff has argued that there was no court order requiring the Plaintiff to agree to a short sale, the court's September 2012 Order, following Plaintiff's failure to implement an agreed to trial modification, served as a warning to Plaintiff that it must uphold Rule 93's good faith requirement. Plaintiff's conduct in regard to the short sale, which it had suggested during mediation, evinces a lack of good faith. Plaintiff essentially strung the Defendant along for months during the short sale negotiation process. Mr. Reali's testimony shows that Seterus was repeatedly informed of Mr. Ibourk's and Dr. Longstroth's relationship as roommates. It appears that Seterus also repeatedly assured the Defendant that the relationship was fine. While Seterus had advance notice of the roommate relationship between the buyer and the seller, the Plaintiff waited until the last possible moment, the night before closing, to halt the sale. Subsequently, Dr. Longstroth has gone so far as to offer to move out of

7

his apartment, and yet the sale has not progressed. For the second time, the Lender has closed off what seemed like a foreclosure alternative to the Defendant.

In addition, it is unclear whether or not the Plaintiff complied with the requirement from the September 2012 Order that the Defendant was "not to suffer any economic costs or expenses attributable to the failure of Plaintiff to fulfill its obligations under the May 14, 2010 settlement." From Mr. Del Rio's testimony, it appears that interest continued to accrue in this action in contravention of the court's September 2012 Order. Plaintiff has argued that the Defendant has not provided any evidence showing that he has incurred economic costs or expenses because of Plaintiff's actions. Plaintiff bases this assertion on the disclaimer on Exhibit 10, stating that "[t]he information on this statement is your loan's contractual information . . . [t]he contractual payment due does not take into consideration any pending foreclosure alternatives . . . ." Because of this disclaimer, Plaintiff argues that the $405,282.31 represented as due on Exhibit 10 is the contractual amount due, rather than a representation of economic costs or expenses sustained by the Defendant.

At the same time, however, Plaintiff has not presented any evidence to show that the servicer is tallying a different amount due from Defendant, which takes into consideration the court's September 2012 Order. The court reiterates now that interest should not have accrued between May 14, 2010 and September 4, 2012.

The court also notes Plaintiff's conduct in response to the contempt subpoena. While the court decided to treat the Defendant's motion as a motion for sanctions pursuant to Rule 93, the court notes that a contempt subpoena was issued in this action. The contempt subpoena provided that if the Plaintiff objected to the contempt motion, the Plaintiff was required to "**file a written answer** with the court and provide a copy to the moving party **at least 3 days before the hearing date** set forth above." (Emphasis in the original.) The Plaintiff only filed its Motion to Dismiss Contempt Proceedings the day before the contempt hearing.

In addition, the Plaintiff, Fannie Mae, did not send a Fannie Mae employee in response to the contempt subpoena. Instead, a Seterus employee was sent who did not know about how

8

decisions were made at Fannie Mae, nor did he know who made the decision to stop the short sale. Mr. Del Rio was not an employee who had worked with Mr. Reali on the short sale. Fannie Mae's failure to send an actual Fannie Mae representative to a contempt hearing, illustrates how difficult it can be to work with lenders and investors and how opaque their decision making process can be to outsiders.

In *Sawyer*, where the Law Court upheld a dismissal with prejudice resulting from a bank's repeated failure to comply with its promises during mediation to provide modification offers, the Law Court cautioned "[i]f banks and mortgage servicers intend to do business in Maine and use our courts to foreclose on delinquent borrowers, they must respect and follow our rules and procedures, including M.R. Civ. P. 93(j)." 2014 ME 81, ¶ 17, 95 A.3d 608.

The Plaintiff has stressed that no reports of non-compliance were issued by the mediator following either the February 15, 2013 mediation session or the January 10, 2014 mediation sessions. The mediator's failure to issue a report of non-compliance, however, is not dispositive regarding whether the Plaintiff has shown a lack of good faith. The court notes that after the short sale fell through, when the parties returned to mediation in January of 2014, the Plaintiff presented the Defendant with a couple of alternative options. Plaintiff's behavior during the January 2014 mediation, however, where it offered options that the Defendant ultimately did not find favorable, does not excuse its prior behavior.

The court finds that the Plaintiff demonstrated a lack of good faith in how it conducted itself regarding the short sale. Plaintiff's failure to demonstrate that it has tolled the interest as required by the September 2012 Order is also troubling. Plaintiff's behavior in regard to Defendant's Motion has also shown a disregard for the Defendant and the court. It is only equitable that the Plaintiff face sanctions. At the same time, however, the court notes that the Plaintiff was never required to approve of a short sale. The court declines to impose the ultimate sanction of dismissal with prejudice at this juncture. *See Unifund CCR Partners*, 2009 ME 19, ¶ 13, 966 A.2d 400.

9

Accordingly, the court orders that Plaintiff is subject to the following sanctions:

1) Since the Plaintiff has repeatedly misled the Defendant during the foreclosure mediation process, which has dramatically prolonged the process and led to the accrual of additional interest and fees, the court finds that the Plaintiff cannot charge the Defendant **any** interest or fees (including attorney's fees) from the date of the first mediation session, May 14, 2010, until the date this order is docketed. The Defendant's account should be updated to reflect the tolling of the interest and fees for the aforementioned time period.

2) The Plaintiff shall also be required to pay Mr. Ibourk's attorney's fees and costs starting from May 14, 2010 to the date this order is docketed. Attorney Hark shall provide an affidavit listing his fees and costs within 10 days of the date of this order. The Plaintiff shall provide any objections to the affidavit within 10 days of when the affidavit is filed.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____October 17, 2014_____

_____
Hon. Roland A. Cole
Justice, Superior Court

10

FEDERAL NATIONAL MORTGAGE ASSOCIATION VS MOULAY M. IBOURK

UTN:AOCSsr  -2010-0006416                           CASE #:PORSC-RE-2010-00024

------------------------------------------------------------------------

|  |  | REPRESENTATION TYPE | DATE |
|---|---|---|---|

01 0000003250  ATTORNEY DOONAN, JOHN A

ADDR 100 CUMMINGS CENTER, STE 225D   BEVERLY MA 01915

| F FOR FEDERAL NATIONAL MORTGAGE ASSOCIATION | PL | RTND | 04/04/2014 |
|---|---|---|---|

02 0000000496  ATTORNEY HARK, ROBERT

ADDR 75 PEARL STREET SUITE 216 PORTLAND ME 04101

| F FOR MOULAY M IBOURK | DEF | RTND | 10/26/2011 |
|---|---|---|---|