2012 ME 50

**Nathan S. WESTON**

v.

**Sharon A. WESTON.**

Supreme Judicial Court of Maine.

Argued: Feb. 14, 2012.
Decided: April 3, 2012.

Dana E. Prescott, Prescott, Jamieson, Nelson & Murphy, LLC, Saco, orally, for appellant Sharon Weston.

Wendy Moulton Starkey, Rose Law, LLC, York, orally, for appellee Nathan Weston.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] Sharon A. Weston appeals from a judgment entered in the District Court (Biddeford, *Cantara, J.*) granting Nathan S. Weston's motion to modify child support for their adult disabled son, Alex. The parties' Massachusetts divorce decree states that Nathan will provide child support for Alex as long as Alex is unemancipated, which is defined as domiciled with Sharon and "principally dependent upon Sharon for support." Sharon argues that Alex is principally dependent upon her for support despite financial assistance that he receives from the State of Maine. We agree and vacate the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] Sharon Weston and Nathan Weston were divorced in Massachusetts in January 2005. One of their two adult children is Alex, now age twenty-seven. Alex has suffered from cerebral palsy, a seizure dis-

order, autistic-like behaviors, and scoliosis since suffering a stroke at the age of three-weeks. Alex is nearly non-verbal and is limited in his ability to move without assistance. His condition is not expected to improve in the future.

[¶ 3] Alex was twenty years old at the time of the divorce and was cared for by Sharon and a state-funded part-time home caretaker in Massachusetts. After the divorce Sharon moved with Alex to Maine and enrolled Alex in a part-time day program. Sharon is not able to work outside the home despite Alex's involvement in this program because she is regularly called to assist him. Nathan endorses Alex living with Sharon and acknowledges the level of Sharon's commitment to Alex. Sharon maintains that regardless of her past employment or Alex's enrollment in school or other programs, caring for him has always been her "major job."

[¶ 4] Since March 2008, Alex and Sharon have also participated in the Port Resources "Shared Living Option" program. The program is operated by a private company through a contract with the State. Through this program, Sharon acts as Alex's "direct support provider." She is required to provide Alex with full-time in-home care, participate in trainings, and "do daily paperwork and weekly paperwork." After Sharon submits her completed paperwork, Port Resources provides her with a weekly "stipend" in the amount of $576.92. This amounts to about $30,000 annually.

[¶ 5] Sharon uses the stipend to pay household bills and living expenses, including groceries, gasoline, utilities, and clothing for her and Alex. The stipend is not unique to Sharon as Alex's mother; it would be paid to anyone hired as Alex's direct support provider. The stipend is tax-free for providers who are unrelated to the person for whom they care, but Sharon is taxed for her stipend because she is Alex's biological mother. The Internal Revenue Service (IRS) requires Port Resources to issue an IRS Form 1099–MISC for Miscellaneous Income "to parents receiving payment to care for their child." The form refers to the payment as "non-employee compensation."

[¶ 6] Alex also receives monthly supplemental security income (SSI) from the federal government and a monthly payment from the State. Yearly, these payments amount to $5512.08. He does not receive any other direct payments.

[¶ 7] The parties' divorce decree incorporated a separation agreement into which they entered in December 2004. The agreement provides that Nathan will pay Sharon $300 per week in child support "until the children are emancipated." The agreement provides that emancipation of the children will be deemed to occur upon the earliest of age eighteen; age twenty-one if the child is domiciled with the custodial parent and principally dependent upon that parent for support; age twenty-three if the child is enrolled in a full-time undergraduate program, domiciled with the custodial parent, and principally dependent upon that parent for support; upon the child's death or marriage; or upon the child "becoming independent of financial support," entering full-time military service, or obtaining full-time employment. It also provides:

> Specifically with respect to Alex, both Nathan and Sharon recognize that it is likely that Alex will continue to be dependent upon his parents beyond age 23. Thus, with respect to Alex, emancipation will be deferred beyond age 23 so long as he continues to be domiciled at Sharon's home and principally dependent upon Sharon for support.

[¶ 8] In September 2008 Nathan filed a motion to modify spousal support and child

support with the District Court.[1] Nathan's claims were twofold. He asserted that (1) the Port Resources program provides financial support for Alex, which renders him emancipated and, in turn, relieves Nathan of his obligation to pay child support; and (2) the Port Resources stipend constitutes income for Sharon that should be considered a factor in computation of child support and spousal support. Sharon filed a cross-motion for modification of spousal support and child support asserting that Nathan's income has substantially increased since the divorce decree was entered in 2005, such that his payments should increase.

[¶ 9] In April 2011 the court issued an order granting Nathan's motion to modify child support and spousal support. In the same order, the court denied Sharon's cross-motion for modification of child support and spousal support. The court rejected the characterization of the Port Resources stipend as income, finding that Sharon only receives the stipend as "representative payee" for Alex and that "[t]he funds are earmarked for Alex's care." The court found that Alex is financially supported by the State of Maine and the Social Security Administration, and is no longer principally dependent upon Sharon for support. Accordingly, the court concluded that Alex is emancipated pursuant to the terms of the divorce decree, and terminated Nathan's child support obligation.

[¶ 10] The court subsequently denied Sharon's M.R. Civ. P. 52(b) motion for amended findings of fact, reconsideration, and for stay. Sharon timely appeals from the court's order granting Nathan's motion

for modification and denying her cross-motion.

## II. DISCUSSION

 [¶ 11] We review a child support modification for an abuse of discretion and the factual findings underlying the court's judgment for clear error. *Levasseur v. Levasseur*, 2010 ME 5, ¶ 6, 987 A.2d 528. The court's findings will not be disturbed if there is any competent evidence in the record to support them. *Holbrook v. Holbrook*, 2009 ME 80, ¶ 8, 976 A.2d 990 (quotation marks omitted).

 [¶ 12] To determine whether the record supports the court's finding that Alex is not principally dependent upon Sharon for support, and therefore emancipated, we must first address the court's interpretation of the term "support." The court implicitly interpreted the term to include only direct financial support, to the exclusion of the indirect financial support and noneconomic support that Sharon provides. "We review de novo whether a provision in a divorce judgment is reasonably susceptible to different interpretations and therefore ambiguous." *Ramsdell v. Worden*, 2011 ME 55, ¶ 17, 17 A.3d 1224.

[¶ 13] Unlike other terms in the decree, the parties did not define the term "support" in the emancipation provision. The context of the provision is not entirely helpful in discerning its meaning. *See Bliss v. Bliss*, 583 A.2d 208, 210 (Me.1990) (stating that the meaning of ambiguous language can be determined by its context within the divorce judgment). The term obviously contemplates financial support, as it is included under "Article II: Finan-

---

1. Nathan registered the Massachusetts divorce decree as a foreign judgment with the District Court pursuant to 19–A M.R.S. § 1765 (2011) in August 2008. The District Court required the parties and the Massachu-

setts Probate and Family Court to enter into a consent order relinquishing Massachusetts jurisdiction over the child support provisions of the decree in favor of Maine, which they did in 2010.

cial Arrangements." However, the use of clearly-defined terms such as "child support" and "expenses" throughout Article II suggests that, specifically with respect to Alex, the parties anticipated providing more general support for him that is different than or in addition to the child support payments, educational expenses, and healthcare costs that are stipulated in the agreement. Given that the bounds of the term "support" are not evident from the language or context of the decree, we conclude that this term is ambiguous and will strive to interpret it consistent with the intent of the divorce court. *See Lewin v. Skehan,* 2012 ME 31, ¶ 24, 39 A.3d 58 ("We construe divorce judgments consistent with the intent of the divorce court, as revealed in the language of the judgment." (quotation marks omitted)).

[¶ 14] The language of the decree is borrowed from the Massachusetts child support statute, which provides that a parent's support obligation for a child can extend to "age twenty-three, if such child is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance due to the enrollment of such child in an educational program . . . ." Mass. Ann. Laws ch. 208, § 28 (LexisNexis 2011). Although the statute refers to "maintenance" rather than "support," the phrase "principally dependent" has a settled meaning in Massachusetts that informs the intent of the divorce court when including this provision in the decree.

[¶ 15] We share the view of the Massachusetts Appeals Court that "principally dependent" is a broadly-defined phrase that includes the child's reliance on the parent for household maintenance and related costs that take the form of indirect financial contributions such as rent, mortgage payments, insurance, and utilities.

*See Tatar v. Schuker,* 70 Mass.App.Ct. 436, 874 N.E.2d 481, 489 n. 18 (2007) (noting that it is permissible for the judge to "consider the mother's expenses in connection with maintaining the marital home for the son when considering his dependency"); *Larson v. Larson,* 28 Mass.App.Ct. 338, 551 N.E.2d 43, 45–46 (1990) (holding that the custodial parent's indirect contributions, including providing lodging, food, utilities, and telephone supported finding of principal dependency on said parent) (citing *Kirwood v. Kirwood,* 27 Mass.App. Ct. 1156, 539 N.E.2d 79, 80–81 (1989)). We also agree that noneconomic contributions "such as the parents' respective involvement with the child's care and wellbeing" are relevant to determining whether an individual is principally dependent upon a parent for support. *Kirwood,* 539 N.E.2d at 80; *accord Larson,* 551 N.E.2d at 45–46.

[¶ 16] Alex is clearly dependent on Sharon for both economic and noneconomic support. Sharon has been Alex's primary caretaker since 2005, and caring for Alex has always taken precedence over her outside employment.[2] Even if the Port Resources funding were to make it possible for another individual to provide this role for Alex, Alex would still be dependent on Sharon for economic support. Sharon estimates that the annual cost of maintaining their household is $40,335. The absolute maximum that Alex could contribute to these costs is $5512.08, the total annual income he receives from SSI and the State. We cannot consider this income in assessing Alex's contribution to the household, *cf.* 19–A M.R.S. § 2001(5)(G) (2011) (stating that a parent's "[g]ross income does not include the amount of money received from means-

---

2. We are not persuaded by Nathan's argument that he is being financially burdened by Sharon's decision to care for Alex at home because the parties have mutually agreed that the current arrangement is the best one for Alex.

tested public assistance programs, including ... supplemental security income" for the purpose of calculating the parent's child support obligation), and we will not let this serve as a basis for relieving Nathan of the long-term financial support obligation to which he agreed. *See Dep't of Human Servs. v. Monty,* 2000 ME 96, ¶ 12, 750 A.2d 1276 (upholding an increase in the noncustodial parent's support obligation in part because the children were receiving public assistance). Notwithstanding the government benefits he receives, Alex would be unable to support himself without Sharon's substantial financial contribution. Alex is principally dependent on Sharon for this support and is therefore not emancipated.

[¶ 17] Alex's incapacity to gain financial independence from either his parents or the government and his corresponding need for life-long care was known to both parties and to the court at the time of the divorce. The parties and the court were also aware that at the time of the divorce Alex was receiving state-funded resources in Massachusetts, in addition to the economic and noneconomic support that Sharon was providing. To now construe "support" to exclude support similar to the types of support that were being provided for Alex at the time of the divorce would be to frustrate the intent of the divorce court, which we will not do. *See Lewin,* 2012 ME 31, ¶ 24, 39 A.3d 58. Sharon's provision of physical and emotional support for Alex, in addition to the indirect financial support she provides by maintaining their household, is what the parties both anticipated and agreed to, and what the court intended by including the support provision as it is written.

[¶ 18] Accordingly, we vacate the order terminating Nathan's child support obligation and remand for further proceedings. On remand, the court is to treat the Port Resources stipend as Sharon's gross income.[3] *See* 19–A M.R.S. § 2001(5)(A) (2011) (stating that "[g]ross income includes income from an ongoing source," including salaries and wages). The increased income of both parties since the time of the divorce may constitute a change in circumstances that would warrant a modification of the parties' support obligations. *See Jabar v. Jabar,* 2006 ME 74, ¶ 13, 899 A.2d 796 (stating that a modification requires proof by a preponderance of evidence that there has been "a substantial change in circumstances that either reduces the payor spouse's ability to contribute to the support of the minor child or reduces the payee spouse's need to receive support" (quotation marks omitted)).

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.

---

3. Although Nathan characterized Sharon as a "representative payee" for Alex with respect to the Port Resources stipend before the District Court, he conceded at oral argument that the Port Resources check is made payable to Sharon, rather than to Sharon in trust for Alex or to Alex. Therefore, on appeal both parties agree that the Port Resources stipend is best understood as income for Sharon, and that her status is an independent contractor of the organization.