MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:       2015 ME 121
Docket:         Kno-14-371
Submitted
  On Briefs:    July 23, 2015
Decided:        September 3, 2015

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
                HUMPHREY, JJ.

KATHERINE E. (TARDIFF) SULLIVAN

v.

LAWRENCE D. TARDIFF

HJELM, J.

[¶1]  Lawrence D. Tardiff appeals from two post-divorce judgment orders, entered by the District Court (Rockland, *Worth, J.*), modifying Tardiff's child support obligation and granting Katherine E. Sullivan's motion for contempt. Tardiff contends that the court erred when it ordered an increase in his weekly child support payment instead of ordering the reduction that he had requested, and when it found him in contempt of the divorce judgment and imposed remedial sanctions.  We affirm both judgments.

## I. BACKGROUND

[¶2]  Sullivan and Tardiff were divorced in December 2011 pursuant to a divorce judgment entered by the District Court after the parties reached a settlement agreement.  The judgment provided that primary residence of the

2

parties' minor child would be with Sullivan and that Tardiff would have contact with the child at least two days per week. The judgment also required Tardiff to pay $132 per week in child support. That obligation was a downward deviation, by agreement of the parties, from $141 that was calculated pursuant to the child support guidelines, *see* 19-A M.R.S. § 2006 (2010), based on Tardiff's income of $59,497 per year and Sullivan's reported income of $18,000 per year. The judgment further required that Tardiff pay Sullivan for his proportionate share of the child's daycare expenses and that he pay her $13,500 to equalize the division of marital property.[1]

[¶3] In October 2012, Sullivan filed a motion for contempt, alleging, among other things, that Tardiff had not complied with the divorce judgment by failing to pay his share of the child's daycare expenses, the property settlement, and attorney fees. In January 2013, while Sullivan's motion for contempt was pending, Tardiff filed a motion to modify the judgment, stating that he had lost his job at the Maine State Prison and that, as a result, the visitation schedule and child support award should be modified. Sullivan filed an opposition to Tardiff's motion and a cross-motion to modify the provisions of the judgment relating to Tardiff's contact with the child.

---

[1]  Although the parties agreed to the divorce judgment, Tardiff appealed from it. We dismissed the appeal after Sullivan filed a motion to dismiss that Tardiff did not oppose.

[¶4]   Tardiff's motion to modify and Sullivan's motion for contempt and cross-motion to modify were appropriately consolidated for hearing.  A two-day hearing was held in January 2014, and Tardiff and Sullivan both appeared with counsel.  A representative of the Department of Corrections, Tardiff's former employer, was also present at the hearing, and she alerted the court that Tardiff had received a $24,000 settlement in 2013 after leaving his position with the Department—something that Tardiff had not disclosed in his responses to Sullivan's discovery requests.  Moreover, Tardiff failed to file an updated child support affidavit and financial statement disclosing this income prior to the hearing, even though he was required to do so by M.R. Civ. P. 108(d)(4).  On February 13, 2014, the court issued an order adjudicating the parental rights issues by denying Tardiff's motion to modify and granting Sullivan's cross-motion.[2] Because of the newly disclosed information that Tardiff had received a settlement from the Department of Corrections, however, the court, with agreement of the parties, deferred its decision on all of the financial issues that were addressed at the hearing, stating that "the record remains open on financial issues."

---

[2]   In that order, the court awarded sole parental rights and responsibilities to Sullivan and limited Tardiff's contact with the child to supervised visits.  Tardiff appealed the order in June 2014 following the court's denial of his motion for findings of fact.  We affirmed the order in a memorandum of decision issued on March 3, 2015. *See Katherine E. (Tardiff) Sullivan v. Lawrence D. Tardiff*, Mem-15-18.  We therefore do not address Tardiff's arguments on this appeal that pertain to the court's February 2014 order.

4

[¶5]  On July 10 and 11, 2014, the court issued two orders: one modifying the child support provisions of the divorce judgment, and the other granting Sullivan's motion for contempt.  With regard to child support, the court entered an order finding that there had been a substantial change in circumstances and modifying the child support to the amount provided by the child support guidelines, *see* 19-A M.R.S. § 2006 (2014), based on Tardiff having an income of $60,700 and Sullivan having an income of $14,016.  Specifically, the court ordered that Tardiff's retroactive 2013 child support obligation would be $152.28 per week, *see* 19-A M.R.S. § 2009(2) (2014) (authorizing child support orders to be modified retroactive to the date the motion was served on the opposing party), and that his child support obligation for 2014 and beyond would increase to $161.19 pursuant to the revised child support table that became effective in February 2014, *see* 17 C.M.R. 10 144 351-16 to -33 (2014).

[¶6]  On the motion for contempt, the court found that, although Tardiff was no longer working at the prison, he remained capable of working full-time and receiving a total of approximately $60,000 per year.  The court also found that, contrary to Tardiff's assertions at the hearing, he had spent a significant amount of money in 2013 on online betting and trading sports cards.

[¶7]  Based on those findings, the court concluded that Tardiff was able to comply with the provisions of the divorce judgment that required him to pay the

property settlement, daycare expenses, and attorney fees, and ordered him to pay $600 per month towards those obligations beginning immediately. The court also ordered that Tardiff turn over his sports card collection to Sullivan and authorized her to sell the items in a commercially reasonable manner and apply the proceeds to Tardiff's outstanding debts to her. The court further required Tardiff to give Sullivan and her attorney access to his bank account information and other financial records. To enforce those orders, the court imposed a remedial sanction of ninety days in jail, but suspended the sentence for thirty-six months as long as Tardiff complied with the payment obligations created by the order.

[¶8] Tardiff filed a motion for findings of fact pursuant to M.R. Civ. P. 52(b) (Tower 2013) on July 25, 2014,[3] which the court denied in December 2014. Prior to that, on August 27, 2014,[4] Tardiff filed this appeal of the court's

---

[3] The version of M.R. Civ. P. 52(b) in effect when Tardiff filed his motion set a filing deadline of "not later than 10 days after notice of findings made by the court." M.R. Civ. P. 52(b) (Tower 2013) (M.R. Civ. P. 52 was amended to increase the time for filing the motion to fourteen days from entry of the judgment, but the amendment did not go into effect until September 1, 2014. *See* 2014 Me. Rules 05 (amending M.R. Civ P. 52) (effective September 1, 2014)). Here, Tardiff contends that he did not receive actual notice of the order and the findings until July 18, 2014. Because his July 25, 2014, motion was filed fewer than ten days "after notice," *see Gosselin v. Better Homes, Inc.*, 256 A.2d 629, 633 (Me. 1969), the motion was timely.

[4] Even though Tardiff's appeal had already been docketed, the court was authorized to rule on the motion pursuant to M.R. App. P. 3(b)(4).

6

July 2014 orders modifying child support and granting Sullivan's motion for contempt, bringing both matters before us.[5]

## II. DISCUSSION

### A. Modification of Child Support

[¶9] Tardiff first contends that the court erred when, rather than granting his motion to reduce child support, it increased his child support obligation from $132 per week that the parties agreed to in the divorce judgment to $161 per week as provided by the child support guidelines. "We review a child support modification for an abuse of discretion and the factual findings underlying the court's judgment for clear error." *Weston v. Weston*, 2012 ME 50, ¶ 11, 40 A.3d 934. "A party moving to decrease the amount of child support . . . must prove by a preponderance of the evidence that the decrease is necessitated by a substantial change in circumstances that either reduces the payor spouse's ability to contribute to the support of the minor child or reduces the payee spouse's need to receive support." *Jabar v. Jabar*, 2006 ME 74, ¶ 13, 899 A.2d 796 (quotation marks omitted).

[¶10] Tardiff argues that his separation from employment with the Department of Corrections presented a substantial change in circumstances warranting a reduction of his child support obligation, and that the court erred by

---

[5] Because the filing of a timely motion pursuant to M.R. Civ. P. 52 tolls the running of the normal twenty-one-day appeal period, Tardiff's appeal is timely even though it was filed more than a month after the court issued the two original orders. *See* M.R. App. P. 2(b)(3).

attributing to him an annual income of $60,700. The court based Tardiff's income on his April 2014 child support affidavit, which states that his income for 2013 was $60,700.[6] His total income for 2013 therefore only represented a slight increase of $1,203 from his income of $59,497 at the time of the divorce judgment, and thus there was not a substantial change in Tardiff's financial circumstances between the divorce judgment and January 2013, when Tardiff filed the motion to modify. *See Twomey v. Twomey*, 2005 ME 124, ¶ 15, 888 A.2d 272 (upholding the trial court's finding that the defendant's new income of $58,500 was "substantially the same" as the defendant's previous income of $60,000).

[¶11]    Tardiff contends, however, that the court erred when it also determined that his earning capacity from employment in 2014 would remain at $40,000, which was approximately the amount he had earned annually while employed by the Department of Corrections, even though he was actually earning only approximately $15,000 annually at his new job at Pen Bay Medical Center. Tardiff's argument calls for us to consider whether the court erred in finding that he was voluntarily underemployed, and, after finding that he was, attributing to him a total income of $60,000, consisting of approximately $20,000 from his Navy pension and imputed employment income of $40,000.

---

[6] Following the January 2014 hearing, Tardiff produced additional financial discovery to account for the $24,000 of back pay he had received in September 2013 from the Department of Corrections, and he also submitted a new child support affidavit in April 2014 to fully reflect his 2013 income.

[¶12] "It is within the trial court's discretion to impute earning capacity to a parent who the court finds is voluntarily underemployed." *Koszegi v. Erickson*, 2004 ME 113, ¶ 14, 855 A.2d 1168. "The determination of whether a party is voluntarily underemployed is a question of fact that we review for clear error." *Stacey-Sotiriou v. Sotiriou*, 2014 ME 145, ¶ 20, 106 A.3d 417 (quotation marks omitted). Here, Tardiff testified that he remained underemployed in order to have more time for visitation with the child and that he was "sure there are plenty" of available jobs that pay more than his current job at Pen Bay. He also testified that he had not been searching for jobs because he wanted to keep his schedule flexible. That testimony is sufficient support for the court's conclusion that Tardiff was voluntarily underemployed.

[¶13] Having properly found Tardiff to be voluntarily underemployed, the court next determined how much income to impute to him. In doing so, the court was entitled to look at a variety of factors, including his "qualifications, income history, and the earning or income opportunities that are reasonably available to [him]." *See Wrenn v. Lewis*, 2003 ME 29, ¶ 18, 818 A.2d 1005. Tardiff earned $38,147 annually while working at the Maine State Prison, and the court did not err in finding that, with Tardiff's military background and work experience, he was capable of finding a similar job with a similar salary. The court's finding that Tardiff had an earning capacity of approximately $40,000 per year in addition to

his roughly $20,000 military pension, for a total of $60,000, was therefore not clearly erroneous, and it did not err when it concluded that there was thus no substantial diminution in his ability to pay child support.

[¶14]  Although Tardiff did not prove a substantial change in *his* ability to pay child support, the court nevertheless found that "[c]ircumstances have changed substantially, and it would be appropriate to modify the child support order."  The court did not specify which circumstances had changed substantially, and Tardiff contends that finding was erroneous.

[¶15]  Tardiff moved for further findings pursuant to M.R. Civ. P. 52 and, because the court had already issued some findings in support of its decision to modify child support, his motion must be viewed as governed by M.R. Civ. P. 52(b).  *See Young v. Young*, 2015 ME 89, ¶ 10 n.3, --- A.3d ---.  Pursuant to that Rule, he was required to submit proposed findings on the issues that he wanted the court to develop further.  *See id.*; *Bell v. Bell*, 1997 ME 154, ¶ 6, 697 A.2d 835 (stating that, when a judgment contains findings, "it is incumbent on the party to set forth specifically any further findings of fact or conclusions of law the party is by motion, pursuant to Rule 52, requesting of the court").  Because Tardiff's motion did not propose any findings regarding whether there was a substantial change in circumstances that would warrant an increase in child support payments, "we will infer that the trial court made any factual inferences needed to support its

ultimate conclusion." *Pelletier v. Pelletier*, 2012 ME 15, ¶ 20, 36 A.3d 903. As discussed above, the court found that there was no substantial change in Tardiff's financial circumstances. We therefore can only infer that the court found a substantial change in Sullivan's financial circumstances. *See Twomey*, 2005 ME 124, ¶ 13, 888 A.2d 272. That finding is supported by the record.

[¶16] In the divorce judgment and accompanying child support worksheet, Sullivan's income is listed as $18,000.[7] In the modified child support order, the court found that Sullivan's income was $14,016 per year, which was the amount of Social Security Disability Insurance benefits that she reported receiving. There was thus a change of approximately $4,000 between the income that was attributed to Sullivan in the divorce judgment and the income that she reported in 2014. Although a change of $4,000 in absolute numbers may not be considered substantial in every circumstance, here it represents a decrease of more than 20 percent in Sullivan's income since the divorce judgment. The court was entitled to conclude that, for someone already on the economic margin with an income of $18,000, a $4,000 decrease would have a material impact on the need for support. The court's implicit conclusion that such a decrease represented a

---

[7] This figure differs from the information in Sullivan's 2011 child support affidavit, which states that her income for that year was approximately $13,107. Nonetheless, the parties agreed to the issuance of the divorce judgment and the child support worksheet, which means that Tardiff also agreed that Sullivan's income was $18,000. He cannot now be heard to challenge that figure post hoc. Additionally, the motion court was entitled to rely on the findings in the divorce judgment when determining whether there had been a substantial post-judgment change in circumstances.

substantial change in circumstances was therefore not erroneous.[8]  Because the court's findings regarding the decrease in Sullivan's income support its conclusion that there was a substantial change in circumstances, the court did not err in modifying Tardiff's child support payments.

B.     Motion for Contempt

[¶17]  Tardiff contends that the court erred by finding him in contempt of the divorce judgment and by imposing contempt sanctions, including ordering that he turn over his sports card collection for sale, ordering that he allow access by Sullivan and her attorney to his bank accounts and financial records, and imposing a suspended jail sentence contingent upon his compliance with the divorce judgment.  "We review the factual findings that form a basis for a court's decision regarding civil contempt for clear error," and "review the judgment of civil contempt for an abuse of discretion."  *Lewin v. Skehan*, 2012 ME 31, ¶ 18, 39 A.3d 58.

[¶18]   In order to find contempt, "the court must find by clear and convincing evidence that: (i) the alleged contemnor has failed or refused to perform an act required . . . by a court order, and (ii) it is within the alleged

_____

[8]  We recognize that the court's finding of a substantial change in circumstances modifies the structure of the parties' agreement at the time of the divorce that Tardiff's child support obligation would be a downward deviation from the amount calculated under child support guidelines.  However, when Tardiff, the beneficiary of that agreement, filed a motion to modify and asked the court to find a substantial change in circumstances, he created the opportunity for the court to recalculate child support based on the child support guidelines rather than the agreement of the parties.

contemnor's power to perform the act required." M.R. Civ. P. 66(d)(2)(D). Tardiff does not dispute that he has not paid daycare fees, attorney fees, and the property settlement as required by the divorce judgment. He does, however, contest the court's finding that he earned or had the capacity to earn at least $60,000 and that he has the present ability to meet those obligations.

[¶19] The child support affidavit that Tardiff submitted in April 2014, *see supra* n.6, stated that he earned $60,700 in 2013. Additionally, as we have discussed, the record supports the court's decision to attribute to Tardiff an earning capacity of approximately $60,000 for each year thereafter. The court therefore did not err in finding that Tardiff earned enough money—and continues to be able to earn enough money—to comply with the divorce judgment and the post-judgment payment order. Moreover, the record supports the court's finding that Tardiff spent a significant amount of money on online betting and eBay purchases while not making the required payments to Sullivan, constituting further evidence of Tardiff's ability to comply with the judgment. Thus, the court did not err in finding Tardiff in contempt.

[¶20] Tardiff contends that the court also erred when it required him to turn over his sports card collection to Sullivan and to allow Sullivan and her attorney access to his bank account information and other financial records. "We review a court's findings made in connection with its remedial order for clear error, and we

review the remedies themselves for an abuse of discretion." *Hogan v. Veno*, 2006 ME 132, ¶ 18, 909 A.2d 638.

[¶21] The court found that, pursuant to the divorce judgment, Tardiff owed more than $15,000 to Sullivan, that he had not made any payments since January 2013, and that he had the ability to pay $600 per month. It also found that Tardiff spent money on his substantial sports card collection when he was required to make payments pursuant to the divorce judgment. Those findings were supported by the record, and the court therefore did not abuse its discretion in requiring Tardiff to turn over the sports cards to Sullivan. *See* M.R. Civ. P. 66(d)(3) ("The court may also order such additional relief as has heretofore been deemed appropriate to facilitate enforcement of orders . . . .").

[¶22] Additionally, the court extensively documented Tardiff's dishonesty and deception, during both discovery and the January 2014 hearing, regarding his finances, including his concealment of the 2013 settlement agreement with the Department of Corrections, and its findings were supported by the record. It was therefore well within the court's discretion to order Tardiff to provide Sullivan and her attorney access to his bank statements and other financial records in order to ensure that Sullivan will be able to obtain reliable third-party information about Tardiff's financial circumstances.

14

[¶23]  Finally, Tardiff contends that the court abused its discretion when it sentenced him to ninety days in jail, which was suspended contingent upon his compliance with the order.  Coercive imprisonment is specifically contemplated in M.R. Civ. P. 66(d)(3)(A) as a remedial sanction for civil contempt.  Tardiff argues, however, that, pursuant to the reasoning in *Murphy v. Bartlett*, 2014 ME 13, ¶ 17, 86 A.3d 610, coercive imprisonment is improper in this case.  In *Murphy*, we held that the trial court erred in finding that the defendant was currently able to make the payments required by a divorce judgment.  *See id.* ¶ 15.  Because "the imposition of coercive imprisonment as a remedy for contempt is premised upon the requirement that the contemnor have the ability and opportunity to purge himself of contempt," we held that coercive imprisonment was improper where the contemnor could not afford the court-ordered payments.  *See id.* ¶ 17.

[¶24]  Here, Tardiff's earning capacity of $60,000 sufficiently exceeds his living expenses to allow him, without hardship, to pay the $600 per month as ordered by the court.[9]  This is in contrast to the situation in *Murphy*, where the defendant's basic living expenses combined with his obligations pursuant to the divorce judgment exceeded his income by approximately $5,000 annually.  *Id.*

---

[9]  Based on the living expenses that Tardiff reported in his financial statement, he will have more than $1,300 left over every month after paying the amount required by contempt order, child support, and living expenses.

¶ 15. Thus, the court did not err by imposing coercive imprisonment as a sanction for Tardiff's contempt.[10]

The entry is:

Judgment affirmed.

**On the briefs:**

Lawrence D. Tardiff, appellant pro se

Christopher K. MacLean, Esq., Elliott & MacLean, LLP, Camden, for appellee Katherine E. Sullivan

Rockland District Court docket number FM-2010-59
FOR CLERK REFERENCE ONLY

---

[10] Sullivan argues that Tardiff should be sanctioned for filing a frivolous appeal, and that she should be awarded reasonable attorney fees and costs caused by the appeal pursuant to M.R. App. P. 13(f). Although Sullivan correctly states that Tardiff has attempted to relitigate many issues already decided in his previous appeal, he also raises new, meritorious arguments regarding the court's two additional orders not addressed there. The portions of this appeal that arise from the two July 2014 orders are not frivolous, and we decline to award sanctions.