STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-10-317

STATE OF MAINE
Cumberland ss Clerk's Office

FEB 10 20__

RECEIVED

ROBERT N. CENTER, as Trustee
of the Robert N. Center Living
Trust dated December 13, 2007
of Waitsfield, Vermont, et al.,

Plaintiffs

v.

MALCOLM F. HALLIDAY,
Individually and as Trustee under
the Halliday Family Trust dated
May 18, 2006 of Potomac, Maryland,
et al.,

Defendants

ORDER ON PLAINTIFFS' MOTION
FOR CONTEMPT

Before the court is plaintiffs' motion for contempt filed August 16, 2016. On September 1, 2016, defendants were served with the subpoena for the hearing on plaintiffs' motion. The hearing was held on September 21, 2016.[1] Plaintiffs appeared and were represented by Attorney Metcalf. Defendants appeared and represented themselves. For the following reasons, the court finds by clear and convincing evidence that defendant Malcolm Halliday is in contempt of the terms of the 2011 stipulated judgment.

Background

Plaintiffs allege defendants have violated the terms of the stipulated judgment agreed to by the parties and signed by the parties' attorneys and a Superior Court justice on April 29, 2011. (Pls.' Ex. 2; Tr. of April 29, 2011 Hr'g.) The stipulated judgment resolved plaintiffs' 2010 complaint against defendants, in which plaintiffs sought, among other things, a declaratory

---

[1] The September hearing was scheduled expeditiously and especially to accommodate defendants, who planned to travel very shortly after the hearing to Maryland for the winter.

1

judgment with regard to easements and boundaries pertaining to the parties' adjoining properties. (Compl. Counts I, II, IV, V; Pls.' Ex. 1.)

The stipulated judgment provides, in relevant part:

Plaintiffs' land described in paragraph 1 is burdened by an easement for the right of ingress and egress across the existing gravel road, in the path, route and width of that existing gravel road as depicted on the Standard Boundary Survey [the Plan] . . . This easement is solely for the purpose of ingress and egress, by pedestrian and vehicular means, and does not include the right to park or store anything on any of the land of the Plaintiffs for any length of time.

The Defendants, individually and as Trustees, their agents, servants, employees, representatives, guests and invitees, and successors in title and those that act in concert with them are hereby PERMANENTLY ENJOINED from parking or storing anything on the Plaintiffs' property as described in paragraph 1 hereof and when exercising their easement rights of ingress and egress they are further PERMANENTLY ENJOINED from deviating from the path, route, and width of the graveled right of way as depicted on the face of the earth as shown on the Plan and the tax map as attached to the complaint as Exhibit C.

The Plan depicts a Path to Shore which is a pedestrian pathway. It is hereby found that the Plaintiffs have the right to use and maintain that pedestrian pathway without disturbance, interference or disruption.

The Defendants, individually and as Trustees, their agents, servants, employees, representatives, guests and invitees, and successors in title and those that act in concert with them are hereby PERMANENTLY ENJOINED from altering or disturbing the pedestrian pathway and its components and from interfering with or obstructing the use of the pedestrian pathway by the Plaintiffs, their guests, invitees, agents, employees, servants, attorneys, and successors in interest.

(Pls.' Ex. 2 ¶¶ 3, 6, 10, 11.) Plaintiffs now allege defendants have violated the terms of the permanent injunction by (1) parking their vehicle on plaintiffs' property; (2) trespassing on plaintiffs' property by moving a compost pile, dumping plaintiffs' flower pots and planters, throwing the planters into the woods, defacing landscaping rocks and fence posts across plaintiffs' property, and leaving notes on plaintiffs' car; and (3) erecting blockades to prohibit plaintiffs' use of their path to the shore. (Pls.' Mot. 4-8.) Plaintiffs seek remedial sanctions,

2

including compensatory and coercive fines, coercive imprisonment, and attorneys' fees. M.R. Civ. P. 66(d)(3).

Findings of Fact

Within days of the signing of the stipulated judgment, defendant Malcolm Halliday parked his car on plaintiffs' property and trespassed on plaintiffs' property. (Pls.' Ex. 3; Pls.' Ex. 2 ¶ 3.) Plaintiffs have never given defendants permission to enter plaintiffs' property in violation of the terms of the stipulated judgment. In July or August 2011, defendant Malcolm Halliday trespassed again on plaintiffs' property and, in a fit of rage, dumped plaintiffs' flower pots. (Pls.' Ex. 2 ¶ 6.) Plaintiffs contacted defendants' attorney, who wrote to defendants and reminded them about the terms of the stipulated judgment and the conduct the stipulated judgment prohibited. (Pls.' Ex. 4.) Again in 2011, defendant Malcolm Halliday trespassed on plaintiffs' property. (Pls.' Ex. 3 7; Pls.' Ex. 2 ¶ 6.)

In the spring of 2012, plaintiffs tried to delineate defendants' right of way with landscaping based on the survey. (Pls.' Ex. 2 ¶ 3.) A surveyor visited the property to ensure the boundaries were correct.[2] Notwithstanding, defendant Malcolm Halliday trespassed on plaintiffs' property and painted plaintiffs' landscaping rocks and fence posts, which were not located in defendants' easement. (Pls.' Ex. 5; Pls.' Ex. 2 ¶ 6.) Plaintiffs understood a deputy sheriff spoke to defendants about the rocks and fence posts. Defendant Malcolm Halliday admitted at the hearing he painted trees on plaintiffs' property with yellow paint. (Pls.' Exs. 12, 13.)

On September 8, 2016, plaintiff Henry was standing on plaintiffs' property near the boundary line, several feet from the fence. (Pls.' Ex. 13.) Defendant Malcolm Halliday

---

[2] The surveyor set the pins but they disappeared. He set the pins again. Plaintiffs have paid nearly $2000 to the surveyor.

3

trespassed on plaintiffs' property by driving his car on plaintiffs' property at a fast pace toward plaintiff Henry. (Pls.' Ex. 2 ¶ 6.) Plaintiff Henry was fearful and stepped to the side. Also on September 8, 2016, both defendants approached plaintiffs and told them to get off defendants' property; plaintiffs were on their own property at the time. (Pls.' Ex. 12 3.) On September 13, 2016, plaintiffs found a wheelbarrow on their property that was not plaintiffs' wheelbarrow. (Pls.' Ex. 14.)

After defendants returned from Maryland in spring 2016, a note from both defendants was placed on plaintiffs' car, stating, incorrectly, that plaintiffs were parked in the wrong place. (Pls.' Ex. 9.) Plaintiffs' car was parked appropriately on their land, as depicted on the last page of exhibit 3, and placing the note required trespassing on plaintiffs' property. (Pls.' Ex. 3; Pls.' Ex. 2 ¶ 6.) Plaintiffs do not park on the right of way reserved for defendants' benefit. (Pls.' Ex. 2 ¶ 3.)

Plaintiffs photographed the note and contacted their attorney. They were concerned because this behavior was becoming more aggressive. A deputy went to defendants' property to speak to them. The next morning, on July 29, 2016, plaintiffs found that their pedestrian pathway to the shore had been blocked by defendants' car and by branches, leaves, and a rope. (Pls.' Ex. 11; Pls.' Ex. 2 ¶¶ 10-11.) The right of way remains blocked. Defendant Malcolm Halliday agreed at the hearing he enlisted his grandson to put the rope across the path.

After July 29, plaintiffs found a manila envelope on their car and received a letter signed by both defendants, who alleged, incorrectly, that plaintiffs were parking their car on defendants' right of way. (Pls.' Ex. 10.) Plaintiffs were parked appropriately on their driveway. Placing the envelope required trespassing on plaintiffs' property. (Pls.' Ex. 2 ¶ 6.)

4

In August 2016, plaintiffs requested that surveyors mark the boundary between the parties' property. Defendant Malcolm Halliday challenged the surveyors, who left to avoid confrontation. The surveyors returned on September 8, 2016 and defendant Malcolm Halliday was again present on plaintiffs' property. (Pls.' Ex. 12; Pls.' Ex. 2 ¶ 6.)

In 2013, after the stipulated judgment was signed, defendants sued plaintiffs for damages allegedly resulting from redirection of runoff water from plaintiffs' property after construction of plaintiffs' new home. Plaintiffs' construction was completed in 2004. In spring 2005, defendants complained to plaintiffs about the water. Defendants' complaint was filed in 2013. Summary judgment was granted in favor of plaintiffs because their complaint was not filed within the statute of limitations. (Pls.' Ex. 6.) Defendants appealed and the judgment in favor of plaintiffs was affirmed by decision dated May 12, 2015. (Pls.' Ex. 7.) The Law Court concluded defendants' complaint was barred either by the three-year or six-year statute of limitations. See Halliday v. Henry, 2015 ME 61, ¶¶ 8-9, 116 A.3d 1270; 17 M.R.S. ¶ 2808[3]; 14 M.R.S. § 752.

On June 8, 2015, fewer than 30 days after the affirmance, defendants filed another complaint against plaintiffs and alleged the same facts as in the 2013 complaint. The 2015 complaint was dismissed based on claim preclusion. (Pls.' Ex. 8.)

Defendants also have reported three attorneys, including plaintiffs' Attorney Metcalf, to the Board of Bar Overseers based on the cases related to defendants' disputes concerning their property. (See Defs.' Docs. filed September 9 & 14, 2016.) Defendants appealed the dismissal of one of the complaints against an attorney. Defendants also have reported two Superior Court justices to the Committee on Judicial Responsibility and Disability based on these cases. (See Defs.' Docs. filed September 14, 2016.)

---

[3] Defendants cited this statute several times during the hearing on the motion for contempt.

In conversation with plaintiff Robert Center, defendants have relied on the 2016 Cedar Beach decision to justify their refusal to obey the terms of the 2011 stipulated judgment. See Cedar Beach/Cedar Island Supporters, Inc. v. Gables Real Estate, LLC, 2016 ME 114, __ A.3d __. At the hearing on the motion for contempt and in their filings, defendants continued to complain at length about the alleged runoff water from plaintiffs' property. (See Defs.' Docs. filed September 14, 2016.)

Defendant Malcolm Halliday's opinions regarding the allegations in the motion for contempt and the accuracy of the attached survey appear in his handwriting on plaintiffs' exhibit 17. (Pls.' Ex. 17.) The words, "lie, false, perjury, knowingly misrep" and various ad hominem attacks on Attorney Metcalf appear on the document. Defendant Malcolm Halliday asserts the survey, on which the stipulated judgment was based, is "false."

The handwriting on exhibits 9 and 10 is the same as defendant Malcolm Halliday's handwriting on exhibit 17. He wrote the note and the envelope. (Pls.' Exs. 9-10.) He added defendant Ingigerdur Halliday's name to the note. (Pls.' Ex. 9.) She apparently signed the envelope. (Pls.' Ex. 10.) Based on his other conduct, the court reasonably infers defendant Malcolm Halliday trespassed on plaintiffs' property to place the note and envelope on plaintiffs' car.

Both defendants participated at the hearing on the motion for contempt. They are capable people who can read, write, speak, and drive. (Pls.' Ex. 12.) Defendant Malcolm Halliday has a Ph.D. and described himself as a scholar and a former principal of a school. Both defendants have the power to conform their conduct to the terms of the 2011 stipulated judgment. M.R. Civ. P. 66(d)(2)(D)(ii).

## Conclusions of Law

In order for the court to find defendants in contempt, plaintiffs must prove by clear and convincing evidence that defendants have "failed or refused to perform an act required or continue[] to do an act prohibited by a court order, and" it is within defendants' "power to perform the act required or cease performance of the act prohibited." M.R. Civ. P. 66(d)(2)(D)(i) & (ii); see Sullivan v. Tardiff, 2015 ME 121, ¶ 18, 124 A.3d 652. Plaintiffs have proved by clear and convincing evidence that defendant Malcolm Halliday intentionally violated the terms of the parties' stipulated judgment when he (1) parked his vehicle on plaintiffs' property; (2) repeatedly trespassed on plaintiffs' property while he dumped flower pots, painted rocks, fence posts, and trees, challenged surveyors hired by plaintiffs, left notes on plaintiffs' car, and tried to hit plaintiff Henry while driving his car; and (3) interfered with and obstructed plaintiffs' use of their path to the shore. (Pls.' Ex. 2 ¶¶ 3, 6, 10, 11.)

Plaintiffs have not proved that defendant Ingigerdur Halliday violated the terms of the parties' stipulated judgment. Based on her conduct and statements at the hearing on the motion for contempt, she clearly disputes the terms of the stipulated judgment. During defendant Malcolm Halliday's testimony regarding plaintiffs' path to the shore, defendant Ingigerdur Halliday interjected, "It's my property." Signing a notice to plaintiffs is not, however, a violation of the terms of the stipulated judgment. Without question on this record, defendant Malcolm Halliday is the culpable party.

Defendant Malcolm Halliday had been warned by his attorney and by deputies about continuing to engage in conduct that violates the terms of the stipulated judgment. (See e.g., Pls.' Ex. 4.) Defendant Malcolm Halliday had the power to cease parking on plaintiffs' property,

7

trespassing on plaintiffs' property, and obstructing plaintiffs' path. He intentionally refused to conform his conduct to the terms of the court's injunction.

Defendants' lawsuits against plaintiffs, their reports of attorneys and justices to professional authorities, and defendant Malcolm Halliday's conduct directed toward plaintiffs and their property are mean spirited. Defendants' refusal to accept the determination of three courts that their allegations about runoff water from plaintiffs' property are not actionable reflects disrespect for the court. Defendants' conduct during the hearing on the motion for contempt also reflects disrespect for the court. Defendant Malcolm Halliday's intentional refusal to obey the 2011 injunctive order from the Superior Court because he does not agree with the terms further reflects disrespect for the court and plaintiffs and is without defense or mitigation. M.R. Civ. P. 66(d)(2)(D).

Plaintiffs have attempted without success to resolve this difficult situation and achieve compliance with the terms of the stipulated judgment without resort to the court. Plaintiffs have now dealt with defendant Malcolm Halliday's contemptuous conduct for more than five years. Based on the above considerations, the court is concerned about defendant Malcolm Halliday's future compliance with the terms of the 2011 stipulated judgment and will order relief pursuant to Rule 66 to encourage compliance with the 2011 court order, which remains in full force and effect. M.R. Civ. P. 66(d)(3).

Conclusion and Remedy

By parking his car on plaintiffs' property, repeatedly trespassing on plaintiffs' property, and obstructing plaintiffs' path to the shore, defendant Malcolm Halliday has violated the provisions of the parties' stipulated judgment dated April 29, 2011 and is in contempt of the court's order. (Pls.' Ex. 2 ¶¶ 3, 6, 10, 11.)

8

The following is ORDERED:

1. Defendant Malcolm Halliday is sentenced to five days at the Cumberland County Jail. Sentence is stayed until December 9, 2016 to give Defendant Malcolm Halliday an opportunity to purge his contempt by removing permanently every obstruction on Plaintiffs' Path to Shore. M.R. Civ. P. 66(d)(3)(B); (Pls.' Ex. 2 ¶¶ 10-11.) Defendant Malcolm Halliday has the ability to remove the obstruction personally or through an agent by December 9, 2016. See Wrenn v. Lewis, 2003 ME 29, ¶ 28, 818 A.2d 1005.

2. Defendant Malcolm Halliday will pay a $5,000.00 coercive fine to the Treasurer, State of Maine. Payment of the fine is suspended to give Defendant Malcolm Halliday an opportunity to comply with the terms of the Stipulated Judgment dated April 29, 2011. (Pls.' Ex. 2.) The fine will be due in full if Defendant Malcolm Halliday violates any of the terms of the Stipulated Judgment. M.R. Civ. P. 66(d)(3)(B).

3. Within 21 days of the date of this order, Plaintiffs' attorney will file an affidavit of attorneys' fees and costs incurred in prosecuting Plaintiffs' Motion for Contempt. M.R. Civ. P. 66(d)(3)(C). In the affidavit, Plaintiffs' attorney shall address the factors specified in Gould v. A-1 Auto, Inc., 2008 ME 65, ¶ 13, 945 A.2d 1225 and shall include the language required by M.R. Civ. P. 7(b)(1)(A).

The clerk is directed to incorporate this order into the docket by reference. M.R. Civ. P. 79(a).

Date: November 10, 2016

Nancy Mills
Justice, Superior Court

9

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. RE-10-317
                                                  ∿M - CuM - 12/9/2010

                                        10

ROBERT N. CENTER,
et al.,

              Plaintiffs

                                                  ORDER ON MOTION FOR
                    v.                            PRELIMINARY INJUNCTION

MALCOLM F. HALLIDAY,
et al.,

              Defendants


Before the court is a motion for preliminary injunction pursuant to M.R. Civ. P.

65. Plaintiffs Robert N. Center and Kathryn W. Henry request that this court enjoin the

defendants, Malcolm F. Halliday and Ingigerdur K. Halliday, from

(1) parking on the plaintiffs' lawn and from deviating from the graveled right of

way as depicted on the tax map;

(2) interfering with the plaintiffs' right of way across the defendants' land;[1] and

(3) altering or disturbing a pedestrian pathway over which the plaintiffs claim

they have a right of passage.

For the following reasons, the motion is granted in part and denied in part.

BACKGROUND

According to the verified complaint, the plaintiff, Robert N. Center, as trustees of

the Robert N. Center Living Trust, and plaintiff Kathryn W. Henry, as trustee of the

Kathryn W. Henry Living Trust, own land located in Harpswell, Maine.[2] The

---

[1] The plaintiffs do not address this request in their memorandum.
[2] The plaintiffs are also owners of a second, distinct parcel of land located in Harpswell, Maine.

1

defendants, as trustees of the Halliday Family Trust, are the owners of adjacent property and access their property by a gravel right of way, which the plaintiffs assert "has appeared on the face of the earth in an unchanged fashion for no less than 40 years." (Compl. ¶ 14; Ex. D.)

From 1979 until approximately 2005, a garage was located at the end of the plaintiffs' driveway. The plaintiffs relocated the garage in 2005 and installed a garden and a lawn in the space. A year before the plaintiffs moved the garage, the defendants acquired a parcel of land from their neighbor, Sharon A. Kirker, which the plaintiffs state gave the defendants a deeded right to park on her land. (See Pl.'s Compl. ¶ 27, Ex. E.) Since the defendants acquired this right and there is no longer a garage at the end of the plaintiffs' driveway, the plaintiffs contend that the defendants started driving across the plaintiffs' land instead of using the graveled right of way to access Ms. Kirker's land.

The plaintiffs, along with others in the community, are the beneficiaries and holders of the right to use a path to the shore.[3] The pedestrian pathway does not encumber the defendants' land. With the consent of Ms. Kirker and the Town of Harpswell, the plaintiffs repaired the path after the winter weather made it unsafe. On July 10, 2010, Mr. Halliday allegedly destroyed the path. (Compl. ¶ 66.) The plaintiffs allege that only Mr. Halliday had the opportunity and means to destroy the path. (Center Aff. ¶ 35.)

DISCUSSION

I.      Standard of Review

In order to succeed on a motion for a preliminary injunction, a moving party has the burden of demonstrating the following:

---

[3] The pedestrian pathway is depicted on the plan recorded at Plan Book 204, Page 585.

2

1) that plaintiff will suffer irreparable injury if the injunction is not granted;
2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant;
3) that plaintiff has established a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and
4) that the public interest will not be adversely affected by granting the injunction.

Ingraham v. Univ. of Maine, 441 A.2d 691, 693 (Me. 1982). These four criteria "are not to be applied woodenly or in isolation from each other; rather, the court of equity should weigh all of these factors together in determining whether injunctive relief is proper in the specific circumstances of each case." Dep't of Envtl. Prot. v. Emerson, 563 A.2d 762, 768 (Me. 1989). For example, if the evidence of success on the merits is strong, the showing of irreparable harm may be subject to less stringent requirements. Id. (citation omitted).

II.     Graveled Right of Way

        a.  Irreparable Injury

The plaintiffs assert that there is irreparable injury because there is no remedy at law to compensate them for the loss of the quiet enjoyment and use of their property. "An injury for which there is no adequate remedy at law is an irreparable injury." Bar Harbor Banking & Trust Co. v. Alexander, 411 A.2d 74, 79 (Me. 1980). Despite the defendants' claims, the defendants' unauthorized use of the plaintiffs' property and their disregard of the plaintiffs' property rights have resulted in irreparable injury. No adequate remedy at law could prevent the defendants' alleged continuing trespass on the plaintiffs' lawn. Furthermore, even if the injury is only a "few blades of grass," as the defendants claim, the plaintiffs have shown a likelihood of success on the merits, as discussed below.

3

b. Balancing of Harms

The plaintiffs assert that there will be no harm to the defendants if this preliminary injunction were to issue. The plaintiffs claim that the defendants will merely be required to remain on the graveled right of way. The defendants, however, claim that the plaintiffs have made it impossible for the defendants to access their property by vehicle. According to the defendants, the plaintiffs have begun parking on the right of way. Additionally, the defendants claim that the plaintiffs' actions restrict the ability of emergency medical personnel to access their property by automobile, which is a concern given the defendants' ages and medical conditions.

Based on the photographs attached to the plaintiffs' affidavits in support of the plaintiffs' verified complaint, the defendants have ample space to park on the graveled right of way granted to them by deed. First, it is clear from these pictures that the defendants park on the lawn. (See Robert Center Aff. ¶ 19, Exs.) Second, it appears as though the defendants drive over the plaintiffs' lawn instead of following the graveled curve in the road. (See Kathryn Henry Aff. ¶ 6, Exs.) Based on these photographs, it appears not only that the defendants have ample space for ingress and egress, but also that the harm to the plaintiffs' property outweighs any inconvenience to the defendants. The plaintiffs have demonstrated that the injury to their land outweighs any harm the defendants will face if they travel on the graveled right of way.

c. Likelihood of Success

A "likelihood of success on the merits" is "at most, a probability; at least, a substantial possibility." Bangor Historic Track, Inc. v. Dep't of Agric., 2003 ME 140, ¶ 9, 837 A.2d 129, 132. Here, the plaintiffs claim that the defendants' easement does not give them the right to drive on the plaintiffs' lawn or park their cars on the right of way.

4

Alternatively, the plaintiffs contend that if the easement is in a different location than in the deed, as the defendants claim, the defendants abandoned the alternative location.

The contested right of way is defined in deeded easements. "Construction of a deed . . . is a question of law." River Dale Ass'n v. Bloss, 2006 ME 86, ¶ 6, 901 A.2d 809, 811. There is no dispute that there is a deeded right of way across the plaintiffs' land.[4] The defendants dispute the location of the right of way. According to the defendants, the plaintiffs have changed the location of the right of way for their own aesthetic reasons. The right of way is, however, clearly depicted in both the tax map and a survey, recorded in Plan Book 204, page 585 in the Cumberland County Registry of Deeds. (See Pl.'s Compl., Exs. C and D.) Based on these documents, the plaintiffs are likely to establish successfully the location of the right of way as they describe it.

The plaintiffs also claim that the defendants have abandoned any alleged prior location of the easement. "A party asserting abandonment has the burden of proof." Phillips v. Gregg, 628 A.2d 151, 152 (Me. 1993). "The party may meet that burden by showing '(1) a history of nonuse coupled with an act or omission evincing a clear intent to abandon, or (2) adverse possession by the servient estate.'" Id. (quoting Canadian Nat'l Ry. v. Sprague, 609 A.2d 1175, 1179 (Me. 1992)). The plaintiffs claim that the defendants regularly used the graveled right of way in the same location for thirty years. Until 2005, the plaintiffs' garage prevented the defendants from parking where they now claim they have a right of way. The plaintiffs contend, therefore, that the defendants acquiesced to the location of the garage and thus the location of the right of way. As the plaintiffs claim, the defendants' acquiescence to the location of the garage

---

[4] The right of way, as described in the deed, is defined as "Right of way on easterly side now or formally of Mrs. Lawretta F. Clark's lot; thence on the easterly side now or formally of Sidney I. Gibson's lot; thence on southerly line now or formally of E.H. Blanchard's lot; thence across the corner of now or formally Pierces' lot; thence along the easterly side of little field, to old right of way; thence to Main Road over road as now traveled." (See Pl.'s Compl., Exs. A and B.)

is evidence of an intent to abandon. See Bolduc v. Watson, 639 A.2d 629, 630 (Me. 1994) (six-year acquiescence to a garage across a private easement demonstrates a clear intent to abandon). Though the defendants dispute the past location of the garage, there is at least a substantial possibility that the plaintiffs will succeed on the merits. (See Pl.'s Compl., Ex. D (survey showing the past location of the garage).)[5]

III.    Pedestrian Pathway[6]

a. Irreparable Injury

The plaintiffs will suffer irreparable injury if the defendants are allowed to continue to damage the pedestrian pathway. There is no adequate remedy at law to ensure the plaintiffs' safe and comfortable access to the shore.

b. Balancing of Harms

Allowing continued altering or disturbing the pathway harms the plaintiffs only. The pedestrian pathway does not burden the defendants' land. (Center Aff. ¶ 34.).

c. Likelihood of Success

The plaintiffs have shown a likelihood of success on the merits of this claim because, as they contend, the pedestrian pathway is not on the defendants' land. There is nothing in any deed that gives the defendants the right to interfere with the plaintiffs' safe access along the pathway.

d. Public Interest

The public has an interest in preventing damage to the pedestrian pathway. As the plaintiffs assert in the verified complaint, the pathway is for the benefit of others in

---

[5] "In a case involving a dispute between two private parties, this [public interest] factor is of diminished importance. Both parties are using their property for residential purposes, and the public interest is not greatly affected regardless of the outcome." Cyr v. Ruotolo, 1985 Me. Super. LEXIS 371, *22 (Me. Super. Ct. Dec. 27, 1985). The public interest is advanced by landowners complying with the terms of their deeds.

[6] The defendants do not address this issue in their memorandum.

6

the community as well as the plaintiffs. (Compl. ¶ 61; Center Aff. ¶¶ 32, 34.) Because the pathway assures safe access to the shore, the public interest favors granting the injunction.

The entry is

> The Plaintiff's motion for Preliminary Injunction is GRANTED in part and DENIED in part.
>
> The Defendants, individually and in their capacity as Trustees of the Halliday Family Trust, and their agents, employees, servants, attorneys, guests, and invitees and those that act in concert with them are enjoined from parking on the Plaintiffs' property and from traveling or deviating from the graveled right of way as depicted on the tax map and as shown on the face of the earth. (Compl. Ex. C.)
>
> The Defendants, individually and in their capacity as Trustees of the Halliday Family Trust, and their agents, employees, servants, attorneys, guests, and invitees and those that act in concert with them are further enjoined from altering or disturbing the pedestrian pathway and its components, as depicted on the 2004 Kirker Boundary Survey. (Compl. Ex. D.)
>
> The remainder of the motion is DENIED.

Date: December 9, 2010

Nancy Mills
Justice, Superior Court

7

OF COURTS
erland County
 Street, Ground Floor
nd, ME 04101



JUDY METCALF ESQ
EATON PEABODY
PO BOX 9
BRUNSWICK ME 04011




K OF COURTS
berland County
y Street, Ground Floor
and, ME 04101




CHRISTOPHER LEDWICK ESQ
PO BOX 884
BRUNSWICK ME 04011